1  Brendan V. Sullivan, Jr.
   Steven M. Cady
2  WILLIAMS & CONNOLLY LLP
   725 Twelfth Street, N.W.
3  Washington, D.C. 20005
   Tel.: 202-434-5321
4  scady@wc.com

5  Maren R. Norton
   STOEL RIVES LLP
6  600 University Street, Suite 3600
   Seattle, WA  98101
7  Tel.:  206-624-0900
   maren.norton@stoel.com

8
   *Attorneys for Defendants*

9

Honorable Salvador Mendoza, Jr.

10            UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF WASHINGTON
11                    AT YAKIMA

12  CYNTHIA HARVEY, individually
    and on behalf of all others similarly
    situated,

13

14                        Plaintiff,

15          v.

16  CENTENE MANAGEMENT
    COMPANY, LLC and
17  COORDINATED CARE
    CORPORATION,

18                        Defendants.

19

No. 2:18-CV-00012-SMJ

**MOTION TO DISMISS FIRST AMENDED COMPLAINT**

(Oral Argument Requested)

October 9, 2018, 11:00 a.m. in Spokane, WA

MOTION TO DISMISS FIRST AMENDED
COMPLAINT - 1
No. 2:18-CV-00012-SMJ

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................1

BACKGROUND ......................................................................................2

ARGUMENT ..........................................................................................3

I.    The Filed-Rate Doctrine Precludes Both of Plaintiff's Claims. .....................4

II.   The FAC Fails To Adequately Plead Breach of Contract. .............................9

III.  Plaintiff Fails To State a Claim Against CMC Under an Alter Ego
      Theory. ...........................................................................................11

      A.    Plaintiff Fails To Allege Fraud or Injustice. .................................12

      B.    Plaintiff Fails To Allege Complete Domination. ...............................15

CONCLUSION ....................................................................................16

MOTION TO DISMISS FIRST AMENDED
COMPLAINT - i
No. 2:18-CV-00012-SMJ

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1

# <u>TABLE OF AUTHORITIES</u>

2

## FEDERAL CASES

3    *Adolf Jewelers, Inc. v. Jewelers Mut. Ins. Co.*, No. 3:08-CV-233, 2008
        WL 2857191 (E.D. Va. July 21, 2008) .................................................10

4    *Alpert v. Nationstar Mortgage LLC*, 243 F.Supp.3d 1176 (W.D.
5        Wash. 2017) ...........................................................................................7

6    *American Tel. & Tel. Co. v. Cent. Office Tel., Inc.*, 524 U.S. 214
        (1998) .....................................................................................................8

7    *Brown v. MCI, WorldCom Network Servs., Inc.*, 277 F.3d 1166 (9th
        Cir. 2002) ...............................................................................................8

8
     *Burlington Insurance Co. v. Blind Squirrel*, LLC, 228 F.Supp.3d 1160
9        (E.D. Wash. 2017) ..................................................................................9

10   *Everitt v. Dover Downs Ent'mt Inc.*, No. 98-cv-6116, 1999 WL
        374163 (E.D. Pa. June 9, 1999) ...........................................................15

11   *Heaphy v. State Farm Mut. Auto. Ins. Co.*, No. C05 5404RBL, 2006
        WL 278556 (W.D. Wash. Feb. 2, 2006) .................................................5

12
     *In re Western States Wholesale Natural Gas Antitrust Litig.*, No. 03-
13       cv-1431, 2009 WL 455658 (D. Nev. Feb. 23, 2009) ...........................15

14   *Phillips v. USAA Cas. Ins. Co.*, 2017 WL 26907 (E.D. Wash. Jan. 3,
        2017) .....................................................................................................14

15   *Pickern v. Pier 1 Imps. (U.S.), Inc.*, 457 F.3d 963 (9th Cir. 2006) ...........9

16   *Poulos v. Naas Foods, Inc.*, 959 F.2d 69 (7th Cir. 1992) .......................14

17   *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) ..........................................9

## STATE CASES

18

19   *CBR Event Decorators, Inc. v. Gates*, 962 N.E.2d 1276 (Ind. App.
        2012) .....................................................................................................14

MOTION TO DISMISS FIRST AMENDED
COMPLAINT - i
No. 2:18-CV-00012-SMJ

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

*Consumer's Co-op v. Olsen*, 419 N.W.2d 211 (Wisc. 1988) ......................12, 14, 15

*Hardy v. Claircom Comm'cns Grp. Inc.*, 937 P.2d 1128 (Wash. App. 1997) ..................................................................................................7

*Massey v. Conseco Servs., LLC*, 879 N.E.2d 605 (Ind. App. 2008)......................12

*McCarthy Finance, Inc. v. Premera*, 347 P.3d 872 (Wash. 2015) .................*passim*

*Meisel v. M&N Modern Hydraulic Press Co.*, 645 P.2d 689 (Wash. 1982) (en banc) .....................................................................11, 12, 14

### STATUTES, RULES, AND REGULATIONS

Fed. R. Civ. P. 8(a).............................................................................................1

Fed. R. Civ. P. 12(b)(6).......................................................................................1

Wash. Admin. Code § 284-170-200 ....................................................................4

Wash. Rev. Code § 48.44.017(2).........................................................................5

Wash. Rev. Code § 48.44.020..............................................................................5

### OTHER AUTHORITIES

Affordable Care Act............................................................................................1

Restatement (Second) of Conflict of Laws § 307 ................................................12

Texas Deceptive Trade Practices Act ..................................................................1

Washington Consumer Protection Act ..........................................................*passim*

MOTION TO DISMISS FIRST AMENDED
COMPLAINT - ii
No. 2:18-CV-00012-SMJ

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

1    Defendants Coordinated Care Corporation (Coordinated Care) and Centene

2    Management Company (CMC), by undersigned counsel, hereby move to dismiss

3    the First Amended Complaint (FAC) in this action pursuant to Rules 8(a) and

4    12(b)(6) of the Federal Rules of Civil Procedure.

5                           **PRELIMINARY STATEMENT**

6        The FAC is a dramatically whittled-down version of Plaintiff's initial

7    Complaint.  As to the parties, Plaintiff has dropped Steven Milman (a Texas-based

8    plaintiff), Centene Corporation (the Defendants' Missouri-based holding

9    company), and Superior HealthPlan, Inc. (a Texas corporation) from the lawsuit.

10   As to the claims, Plaintiff has given up on her causes of action under the

11   Affordable Care Act and the Texas Deceptive Trade Practices Act.  All that

12   remains is a putative Washington-only class action based on state law claims of

13   breach of contract and violation of the Washington Consumer Protection Act

14   (CPA).  The allegations themselves remain as thin as ever, still focused on an

15   alleged inadequate provider network and the alleged failure to properly reimburse

16   claims.

17       This slimmed-down, Washington-focused FAC makes apparent that Plaintiff

18   is seeking to usurp the state regulator's job—to police network adequacy issues

19   and challenge the rates paid for the insurance plans at issue.  Those are matters that

MOTION TO DISMISS FIRST AMENDED
COMPLAINT - 1
No. 2:18-CV-00012-SMJ

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1    the Washington State Office of the Insurance Commissioner (OIC) is specifically

2    charged with regulating.  This Court should not allow Plaintiff to effect an end-run

3    around the OIC's authority.  It should likewise prevent Plaintiff from swapping

4    CMC in for Centene Corporation.  By voluntarily amending the Complaint to

5    exclude Centene Corporation, Plaintiff essentially conceded that Coordinated

6    Care's parent company is not a proper defendant.  Neither is CMC.  CMC is a

7    Wisconsin corporation with its principal place of business in St. Louis, Missouri.

8    It merely provides management and administrative services to Coordinated Care

9    and other Centene subsidiaries.  CMC is in no way Coordinated Care's alter ego,

10   and so there is no basis for including CMC as a defendant.

11        The FAC should be dismissed for three reasons.  *First*, the filed-rate-

12   doctrine bars Plaintiff from bringing her claims, which, in essence, seek to

13   challenge insurance rates already approved by the OIC.  *Second*, the FAC fails to

14   adequately allege a breach of contract.  *Third*, the FAC fails to state a claim against

15   CMC on an alter-ego theory.

16                                        **<u>BACKGROUND</u>**

17        On the eve of oral argument for the fully-briefed motion to dismiss the initial

18   Complaint, Plaintiff sought leave to amend her Complaint to drop multiple parties

19   and multiple claims.  She filed the FAC shortly thereafter.  The allegations still

MOTION TO DISMISS FIRST AMENDED
COMPLAINT - 2
No. 2:18-CV-00012-SMJ

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1    focus on Ms. Harvey's inability to access certain providers and the denial of

2    certain claims.  She now brings this action on behalf of "[a]ll persons in the state of

3    Washington who were insured by Defendants' Ambetter insurance product which

4    was purchased through an ACA [Health Insurance Exchange] from January 11,

5    2012 to the present."  FAC ¶ 56.

6                                    **<u>ARGUMENT</u>**

7            Plaintiff alleges that, by maintaining an allegedly inadequate provider

8    network and denying claims, Coordinated Care and CMC breached the insurance

9    contracts between Coordinated Care and the putative class members, and violated

10   the CPA.  Among other things, on behalf of the class, Plaintiff seeks the

11   "difference in value between the value of the policy as represented (the full

12   premium prices paid) and the value of the policy as actually accepted and delivered

13   . . . ."  FAC ¶ 82.

14           The filed-rate doctrine precludes Plaintiff's claims because the claims

15   challenge insurance rates that were filed with and approved by the OIC.  Even if

16   Plaintiff's claims were not precluded by the filed-rate doctrine, Plaintiff's breach-

17   of-contract claim must be dismissed for being inadequately pled.  Finally, Plaintiff

18   cannot maintain either claim against CMC on an alter-ego theory, and CMC should

19   be dismissed from the case.

MOTION TO DISMISS FIRST AMENDED
COMPLAINT - 3
No. 2:18-CV-00012-SMJ

**I.      The Filed-Rate Doctrine Precludes Both of Plaintiff's Claims.**

To adjudicate Plaintiff's damages claim under either her breach-of-contract or her CPA cause of action would require this Court to review and evaluate insurance rates that have already been approved by the OIC.  The filed-rate doctrine bars precisely this kind of judicial interference with agency-regulated ratemaking.  For that reason alone, Plaintiff's claims should be dismissed.

The OIC is charged with reviewing and approving health insurance premiums in Washington pursuant to a detailed framework of state laws and regulations.  *McCarthy Finance, Inc. v. Premera*, 347 P.3d 872, 875 (Wash. 2015) (collecting relevant statutory and regulatory provisions).  The state regulator protects consumers upfront from "ambiguous or misleading contracts and deceptive solicitations" and, after consumers sign up for a particular insurance policy, from "benefits [that] . . . are 'unreasonable in relation to the amount charged for the contract.'"  *Id*. (citations omitted).  To those ends, the OIC is vested with the authority to review health insurance plan contracts and approve or disapprove on a variety of grounds.  Wash. Rev. Code § 48.44.020.  One basis for disapproval is the failure to satisfy the minimum health insurance standards set forth in state regulations, *id*. § 48.44.020(2)(f), including the requirements for maintaining adequate provider networks.  Wash. Admin. Code § 284-170-200.  As

MOTION TO DISMISS FIRST AMENDED
COMPLAINT - 4
No. 2:18-CV-00012-SMJ

1   part of the review process, the Commissioner requires insurers to submit detailed

2   information concerning insurance rates and their ratemaking methodology.  Wash.

3   Rev. Code §§ 48.44.017(2) & 48.44.020(3).  Rates and modifications of rates must

4   go through the OIC review and approval process before taking effect.  *Id*.

5   § 48.44.020(3).

6          The filed-rate doctrine is designed to keep courts out of this agency-driven

7   process.  That doctrine is a "court-created rule to bar suits against regulated

8   utilities involving allegations concerning the reasonableness of the filed rates.  This

9   doctrine provides, in essence, that any 'filed rate'—a rate filed with and approved

10  by the governing regulatory agency—is per se reasonable."  *McCarthy Finance,*

11  *Inc.*, 347 P.3d at 875 (citation omitted).  Courts fashioned this limitation on their

12  own power with two purposes in mind: "(1) to preserve the agency's primary

13  jurisdiction to determine the reasonableness of rates, and (2) to insure that

14  regulated entities charge only those rates approved by the agency."  *Id*. (citation

15  omitted).  To achieve those goals, courts will not reevaluate any filed and approved

16  rates "because doing so would inappropriately usurp the agency's role."  *Id*. at 873.

17         In *McCarthy Finance, Inc. v. Premera*, the Washington Supreme Court

18  recently applied the filed-rate doctrine to a case involving health insurance.  *See*

19  347 P.3d 872; *see also Heaphy v. State Farm Mut. Auto. Ins. Co*., No. C05

MOTION TO DISMISS FIRST AMENDED
COMPLAINT - 5
No. 2:18-CV-00012-SMJ

1    5404RBL, 2006 WL 278556, at *2 (W.D. Wash. Feb. 2, 2006) (affirming that

2    filed-rate doctrine applies to claims related to insurance premiums).  Plaintiffs

3    alleged that a group of insurers colluded and induced the plaintiffs to purchase

4    policies under false pretenses and then charged them excessive and deceptive rates.

5    *McCarthy Finance, Inc.*, 347 P.3d at 873–74.  They sought compensation for the

6    excessive premium payments.  *Id*. at 874.  The Washington Supreme Court

7    affirmed dismissal of the plaintiffs' CPA claims based on the filed-rate doctrine.

8    The key question was "whether the claims and damages related to agency-

9    approved rates . . . would necessarily require courts to reevaluate agency-approved

10    rates."  *Id*. at 875.  The court concluded that, to evaluate whether the premiums

11    charged were excessive, it would need to "determine what health insurance

12    premiums would have been reasonable for the Policyholders to pay as a baseline."

13    *Id*. at 876.  In other words, the "requested damages cause[d] [plaintiffs'] CPA

14    claims to run squarely against the filed rate doctrine."  *Id*.

15        That reasoning controls the outcome here: Plaintiff's CPA and breach-of-

16    contract claims run headlong into the filed-rate doctrine.  Just as in *McCarthy*

17    *Finance*, Plaintiff's basic allegation is that she overpaid in premiums relative to the

18    benefits she received, particularly with respect to the provider network covered by

19    her policy.  As to her CPA claim, Plaintiff seeks damages that capture the

MOTION TO DISMISS FIRST AMENDED
COMPLAINT - 6
No. 2:18-CV-00012-SMJ

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1  "difference in value between the value of the policy as represented (the full

2  premium prices paid) and the value of the policy as actually accepted and

3  delivered," which she also frames as "damages incurred as a result of having to pay

4  for services that should have been covered by the insurance."  FAC ¶ 82.  As to her

5  contract breach claim, Plaintiff seeks damages "consisting of all or part of the

6  amount of the premiums . . . paid."  *Id.* ¶ 70.

7       In framing her damages, Plaintiff effectively acknowledges that she received

8  at least some benefits under her policy.  To determine whether the benefits

9  received rendered the premiums Plaintiff paid excessive, this Court would have to

10  first assess a "reasonable . . . baseline" for what Plaintiff should have paid and then

11  subtract that from the premiums charged by Coordinated Care.  *McCarthy Finance,*

12  *Inc.*, 347 P.3d at 876.  That damages assessment would force the Court to

13  reevaluate the insurance rates that the OIC has already reviewed and approved for

14  Coordinated Care's policies in Washington.  Therefore, the filed-rate doctrine bars

15  Plaintiff from pursuing her claims, which would require this Court to second-guess

16  the agency's determination.  *See, e.g.*, *Alpert v. Nationstar Mortgage LLC*, 243

17  F.Supp.3d 1176, 1183 (W.D. Wash. 2017) (applying the filed-rate doctrine to

18  dismiss claim where plaintiff sought "difference between what he was charged and

19  the reasonable cost of insurance"); *Hardy v. Claircom Comm'cns Grp. Inc.*, 937

MOTION TO DISMISS FIRST AMENDED
COMPLAINT - 7
No. 2:18-CV-00012-SMJ

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1  P.2d 1128, 495–96 (Wash. App. 1997) (dismissing claim because "court would

2  necessarily have to consider the reasonableness of the rates charged").

3       Plaintiff may try to respond that she is challenging Defendants' conduct—

4  the maintenance of inadequate provider networks and failure to reimburse

5  claims—rather than the rates charged.  For purposes of the filed-rate doctrine,

6  however, those are two sides of the same coin.  As the U.S. Supreme Court put it:

7  "Rates . . . do not exist in isolation.  They have meaning only when one knows the

8  services to which they are attached.  Any claim for excessive rates can be couched

9  as a claim for inadequate services and vice versa." *American Tel. & Tel. Co. v.*

10 *Cent. Office Tel., Inc.*, 524 U.S. 214, 223 (1998).  Accordingly, "the filed-rate

11 doctrine . . . bars suits challenging services, billing, or other practices when such

12 challenges, if successful, would have the effect of changing the filed tariff."

13 *Brown v. MCI, WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1170 (9th Cir.

14 2002).  Therefore, even if Plaintiff attempts to characterize her claims as focused

15 on the insurance benefits at issue, she is still essentially alleging that the premiums

16 she paid were too high in light of the benefits provided.  This Court should reject

17 Plaintiff's challenge to rates blessed by the OIC and dismiss Plaintiff's breach-of-

18 contract and CPA claims as barred by the filed-rate doctrine.

19

MOTION TO DISMISS FIRST AMENDED
COMPLAINT - 8
No. 2:18-CV-00012-SMJ

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1    **II.    The FAC Fails To Adequately Plead Breach of Contract.**

2          If Plaintiff's breach-of-contract claim were to survive the filed-rate doctrine,

3    it still would fail on its own terms.  Despite filing an amended complaint, Plaintiff

4    has made no attempt to improve her deficient breach-of-contract claim.  "In order

5    to establish a breach of contract claim, the plaintiff must demonstrate proof of

6    four elements: duty, breach, causation, and damages."  *Burlington Insurance Co. v.*

7    *Blind Squirrel*, LLC, 228 F.Supp.3d 1160 (E.D. Wash. 2017) (citation omitted).

8    To survive a motion to dismiss, Plaintiff's claims "must contain sufficient

9    allegations of underlying facts to give fair notice and to enable the opposing party

10   to defend itself effectively."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

11   Put slightly differently, the complaint's allegations must "give the defendant fair

12   notice of what the plaintiff's claim is and the grounds upon which it rests."

13   *Pickern v. Pier 1 Imps. (U.S.), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006) (internal

14   quotation marks omitted).  Here, the allegations fail under these standards.

15         The Complaint plucks from the insurance contract some broad language

16   delineating members' rights.  FAC ¶ 66.  The Complaint also lays out a scattering

17   of instances in which Ms. Harvey was dissatisfied with her insurance coverage, as

18   well as conclusory statements alleging that Defendants failed to maintain an

19   adequate network.  *Id*. ¶¶ 51–52.  Taking that tack, any policyholder could

MOTION TO DISMISS FIRST AMENDED
COMPLAINT - 9
No. 2:18-CV-00012-SMJ

1    transform small-scale grievances into a federal case of breach of contract.  This

2    approach gives Defendants no notice of *how* the alleged conduct breached the cited

3    contractual provisions or *how* Defendants fell short of any obligations.

4          Plaintiff's allegation of damages is similarly deficient.  Plaintiff describes

5    her monetary loss and that of the purported class as "consisting of all or part of the

6    amount of the premiums they paid as well as amounts they paid pursuant to

7    improper billings by Defendants and expenses incurred in seeking or obtaining

8    medical services."  FAC ¶ 70.  This vague approach amounts to saying that some

9    undefined portion of what Plaintiff paid Coordinated Care represents her damages.

10   Moreover, Plaintiff acknowledges that "[i]n many cases" she successfully utilized

11   the appeals process built into the insurance contract to resolve her disputes with

12   Coordinated Care, *id.* ¶ 53, adding further uncertainty to the allegations (including

13   how Plaintiffs' allegations could amount to a breach of contract).  Such an

14   undefined claim provides no notice of what compensation Plaintiff is seeking or

15   what specifically was breached, making it impossible for Defendants to respond.

16   *See Adolf Jewelers, Inc. v. Jewelers Mut. Ins. Co.*, No. 3:08-CV-233, 2008 WL

17   2857191, at *4 (E.D. Va. July 21, 2008) ("[A]llegations that [plaintiff] (1) incurred

18   unnecessary and considerable costs and other damages, (2) was inconvenienced,

19   and (3) lost time do not give [defendant insurance company] fair notice of the

MOTION TO DISMISS FIRST AMENDED
COMPLAINT - 10
No. 2:18-CV-00012-SMJ

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1    grounds for [plaintiff's] claim." (internal quotation marks omitted)).   Despite

2    being presented a second time, the breach-of-contract claim remains facially

3    inadequate and should be dismissed.

4    **III.    Plaintiff Fails To State a Claim Against CMC Under an Alter Ego**

5    **Theory.**

6        As an apparent admission that her alter ego theory against Centene

7    Corporation was unworkable, Plaintiff dropped it as a defendant.  But Plaintiff has

8    added CMC as a defendant and now advances an even more tenuous alter ego

9    theory—that this Court should pierce the veils of both Coordinated Care *and* CMC

10    through their connection with Centene Corporation, and hold CMC liable for

11    Coordinated Care's alleged wrongdoing.

12        This new alter ego theory—the sole discernible reason for including CMC as

13    a defendant—fails like the first one.  Plaintiff again ignores a foundational

14    requirement of the alter ego doctrine—that the corporate form must be respected

15    unless it has been misused to commit a fraud or injustice.  Plaintiff makes no

16    allegations at all explaining how the relationship between Coordinated Care and

17    CMC effects any fraud or injustice on Plaintiff.  But even as to the other main

18    requirement of the alter ego doctrine—the total domination and control of one

19    corporation by another—Plaintiff's allegations fall short.

MOTION TO DISMISS FIRST AMENDED
COMPLAINT - 11
No. 2:18-CV-00012-SMJ

1          **A.      Plaintiff Fails To Allege Fraud or Injustice.**

2          Whatever the relationship between two related corporate entities, veil-

3    piercing is not appropriate unless it is required to avoid a fraud or injustice on the

4    plaintiff.   *See, e.g.*, *Meisel v. M & N Modern Hydraulic Press Co.*, 645 P.2d 689,

5    692 (Wash. 1982) (en banc) (recognizing that veil-piercing is appropriate only

6    where it is "necessary and required to prevent unjustified loss to the injured party"

7    (internal quotation marks and citation omitted)); *Massey v. Conseco Servs., L.L.C.*,

8    879 N.E.2d 605, 609 (Ind. App. 2008) (requiring that plaintiff show that "the

9    misuse of the corporate form would constitute a fraud or promote injustice"

10   (internal quotation marks and citation omitted)); *Consumer's Co-op v. Olsen*, 419

11   N.W.2d 211, 214 (Wis. 1988) (requiring plaintiff to show that "applying the

12   corporate fiction would accomplish some fraudulent purpose, operate as a

13   constructive fraud, or defeat some strong equitable claim" (internal quotation

14   marks and citation omitted)).[1]

15

16          [1] Because Plaintiff seeks to disregard the corporate separateness of both

17   Coordinated Care (an Indiana corporation) and CMC (a Wisconsin corporation),

18   Indiana and Wisconsin law likely apply.  *See* Restatement (Second) of Conflict of

19   Laws § 307 (law of "state of incorporation" applies to questions of shareholder

MOTION TO DISMISS FIRST AMENDED
COMPLAINT - 12
No. 2:18-CV-00012-SMJ

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1      The FAC lacks any allegations that suggest this prong of the alter ego

2  inquiry is met.  The sole factual basis of Plaintiff's alter ego case is a one-

3  paragraph cut-and-paste from a financial statement, which says that Coordinated

4  Care contracts with CMC for the provision of various "management services."

5  FAC ¶ 2.  From that point forward, Plaintiff proceeds to ignore any distinction

6  between the Coordinated Care and CMC.  *See id.* (stating that the term "Centene"

7  would be used to "refer to the joint activities of Centene Management Company,

8  LLC and Coordinated Care").

9      Even if such a management services agreement were improper (as is shown

10  below, *see infra* p. 15, it is not), Plaintiff fails to suggest any reason why that

11  arrangement is fraudulent or unjust as to her.  Notably absent from the FAC is any

12  allegation that Coordinated Care is undercapitalized or unable financially to

13  provide Plaintiff appropriate relief.  In fact, Plaintiff's allegations suggest the

14  opposite; she states that she has successfully used the appeal process provided for

15  in her insurance contract to secure reimbursement from Coordinated Care.  FAC ¶

16  53.  This is reason enough to dismiss Plaintiff's alter ego claim.  If Coordinated

17  Care can provide Plaintiff sufficient relief, then veil-piercing is clearly not

18  liability).  But the alter ego tests of Indiana, Wisconsin, and Washington are

19  broadly similar, and Plaintiff's alter ego allegations would fail under each one.

MOTION TO DISMISS FIRST AMENDED
COMPLAINT - 13
No. 2:18-CV-00012-SMJ

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1    necessary.  *See, e.g.*, *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 74 (7th Cir. 1992)

2    (Wisconsin law) (recognizing that veil-piercing was not "required to avoid . . .

3    possible fraud" because plaintiff could not allege "that the assets of [the

4    subsidiary] would be insufficient to satisfy a judgment"); *Phillips v. USAA Cas.*

5    *Ins. Co.*, No. 2:16-CV-0381-TOR, 2017 WL 26907, at *3 (E.D. Wash. Jan. 3,

6    2017) (Washington law) (declining to add defendant entity under veil-piercing

7    theory because piercing was not "necessary to prevent an unjustified loss," as the

8    subsidiary "is willing to pay the amount . . . owed").

9        Moreover, Plaintiff has not pled any causal connection between Defendants'

10    corporate form and Plaintiff's alleged injury, nor has Plaintiff pled any misuse of

11    the corporate form.  *See, e.g.*, *Meisel*, 645 P.2d at 693 ("Intentional misconduct

12    must be the cause of the harm that is avoided by disregard."); *CBR Event*

13    *Decorators, Inc. v. Gates*, 962 N.E.2d 1276, 1282–83 (Ind. App. 2012) ("[T]he

14    fraud or injustice alleged by a party seeking to pierce the corporate veil must be

15    caused by, or result from, misuse of the corporate form."); *Consumer's Co-op*, 419

16    N.W.2d at 218 (misuse of corporate form "must proximately cause the injury or

17    unjust loss complained of").  Plaintiff alleges that she was harmed because

18    Coordinated Care did not appropriately reimburse her for various treatments.  FAC

19

MOTION TO DISMISS FIRST AMENDED
COMPLAINT - 14
No. 2:18-CV-00012-SMJ

1    ¶¶ 51–53.  These allegations have nothing at all to do with the relationship between

2    Coordinated Care and CMC.

3        **B.**    **Plaintiff Fails To Allege Complete Domination.**

4        Plaintiff does no better on the other prong of the alter ego test, which

5    requires a showing that one company "complete[ly] dominat[ed]" the other.

6    *Consumer's Co-op*, 419 N.W.2d at 217–18.  The sole basis for Plaintiff's

7    suggestion that CMC dominates Coordinated Care is that, under a "management

8    services agreement," CMC provides Coordinated Care a number of management

9    and administrative services.  FAC ¶ 2.  As was established in Centene

10   Corporation's reply in support of its motion to dismiss, however, these

11   arrangements are common and not indicative of a failure to respect corporate

12   separateness.  *See* Centene Reply at 5–6, ECF No. 33 (citing *In re Western States*

13   *Wholesale Natural Gas Antitrust Litig.*, No. 03-cv-1431 *et al.*, 2009 WL 455658, at

14   *11–*12 (D. Nev. Feb. 23, 2009); *Everitt v. Dover Downs Ent'mt Inc.*, No. 98-cv-

15   6116, 1999 WL 374163, at *6 (E.D. Pa. June 9, 1999)).  As the Court in *Everitt*

16   noted, in a traditional holding company structure (like Centene's), it "makes

17   economic sense" for "[c]ertain activities [to be] centralized."  *Everitt*, 1999 WL

18   374163, at *6.  That is all that Plaintiff has alleged that Defendants have done.

19   Accordingly, her control allegations fall far short, and CMC should be dismissed.

MOTION TO DISMISS FIRST AMENDED
COMPLAINT - 15
No. 2:18-CV-00012-SMJ

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1

## **<u>CONCLUSION</u>**

2        For the foregoing reasons, the Court should dismiss the FAC as to all

3  Defendants.

4  Dated:  August 1, 2018        Respectfully submitted,

5                     STOEL RIVES LLP

6                     By:  _/s/ *Maren R. Norton*_____

7                     Maren R. Norton
                         600 University Street, Suite 3600
                         Seattle, WA  98101

8                     Tel.:  206-624-0900
                         maren.norton@stoel.com

9

10                   Brendan V. Sullivan, Jr.
                         Steven M. Cady
                         WILLIAMS & CONNOLLY LLP

11                  725 Twelfth Street, N.W.
                         Washington, D.C. 20005

12                  Tel.: 202-434-5321
                         Fax: 202-434-5029

13                  scady@wc.com

14                  *Attorneys for Defendants*

15

16

17

18

19

MOTION TO DISMISS FIRST AMENDED
COMPLAINT - 16
No. 2:18-CV-00012-SMJ

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1

## **CERTIFICATE OF SERVICE**

2          I hereby certify that on August 1, 2018, I electronically filed the foregoing

3    with the Clerk of the Court using the CM/ECF System, which in turn automatically

4    sent a Notice of Electronic Filing to all parties in the case who are registered users

5    of the CM/ECF system.  The Notice of Electronic Filing for the foregoing

6    specifically identifies recipients of electronic notice.

7

8                                   /s/ *Maren R. Norton*
                                   Maren R. Norton
9                                   600 University Street, Suite 3600
                                   Seattle, WA  98101
10                                  Tel.:  206-624-0900
                                   maren.norton@stoel.com

11

12

13

14

15

16

17

18

19

MOTION TO DISMISS FIRST AMENDED
COMPLAINT - 17
No. 2:18-CV-00012-SMJ

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*