1   Brendan V. Sullivan, Jr.                    Honorable Salvador Mendoza, Jr.
    Steven M. Cady
2   WILLIAMS & CONNOLLY LLP
    725 Twelfth Street, N.W.
3   Washington, D.C. 20005
    Tel.: 202-434-5321
4   scady@wc.com

5   Maren R. Norton
    STOEL RIVES LLP
6   600 University Street, Suite 3600
    Seattle, WA  98101
7   Tel.:  206-624-0900
    maren.norton@stoel.com

8
    *Attorneys for Defendants*
9

10              UNITED STATES DISTRICT COURT
             EASTERN DISTRICT OF WASHINGTON
11                    AT YAKIMA

12  CYNTHIA HARVEY, individually        No. 2:18-CV-00012-SMJ
    and on behalf of all others similarly
    situated,                           **MOTION TO DISMISS SECOND
13                                       AMENDED COMPLAINT**

14              Plaintiff,              (Oral Argument Requested)

15       v.                            NOTE ON MOTION CALENDAR:
                                       **November 20, 2018 at 10:00 a.m.
16  CENTENE MANAGEMENT                 in Spokane**
    COMPANY, LLC and
    COORDINATED CARE
17  CORPORATION,

18              Defendants.

19

MOTION TO DISMISS SECOND AMENDED                    **STOEL RIVES LLP**
COMPLAINT - 1                                             ATTORNEYS
No. 2:18-CV-00012-SMJ                       600 University Street, Suite 3600, Seattle, WA  98101
                                                    *Telephone 206.624.0900*

1

# **TABLE OF CONTENTS**

2    PRELIMINARY STATEMENT ..............................................................1

3    BACKGROUND ..............................................................................2

    ARGUMENT ..................................................................................3

4    I.    The Filed-Rate Doctrine Precludes Both of Plaintiff's Claims.......................4

5    II.    The Second Amended Complaint Fails To Adequately Plead

6         Breach of Contract........................................................................11

    III.    Plaintiff Fails To State a Claim Against CMC Under an Alter Ego

7         Theory........................................................................................15

8         A.    Plaintiff Fails To Allege Fraud or Injustice. ......................................16

9         B.    Plaintiff Fails To Allege Complete Domination. ..............................19

    CONCLUSION ...............................................................................20

10

11

12

13

14

15

16

17

18

19

MOTION TO DISMISS SECOND AMENDED
COMPLAINT - i
No. 2:18-CV-00012-SMJ

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1

## <u>TABLE OF AUTHORITIES</u>

2

### FEDERAL CASES

3  *Adolf Jewelers, Inc. v. Jewelers Mut. Ins. Co.*, No. 3:08-CV-233, 2008
WL 2857191 (E.D. Va. July 21, 2008) ...............................................14

4  *Alpert v. Nationstar Mortgage LLC*, 243 F.Supp.3d 1176 (W.D.
Wash. 2017) .............................................................................................8

5

6  *American Tel. & Tel. Co. v. Cent. Office Tel., Inc.*, 524 U.S. 214
(1998) .......................................................................................................9

7  *Brown v. MCI, WorldCom Network Servs., Inc.*, 277 F.3d 1166 (9th
Cir. 2002) .................................................................................................9

8

9  *Everitt v. Dover Downs Ent'mt Inc.*, No. 98-cv-6116, 1999 WL
374163 (E.D. Pa. June 9, 1999) ............................................................19

10  *Heaphy v. State Farm Mut. Auto. Ins. Co.*, No. C05 5404RBL, 2006
WL 278556 (W.D. Wash. Feb. 2, 2006) .................................................6

11  *In re Western States Wholesale Natural Gas Antitrust Litig.*, No. 03-
cv-1431, 2009 WL 455658 (D. Nev. Feb. 23, 2009).............................19

12

13  *Phillips v. USAA Cas. Ins. Co.*, No. 2:16-CV-0381-TOR, 2017 WL
26907 (E.D. Wash. Jan. 3, 2017) ..........................................................18

14  *Pickern v. Pier 1 Imps. (U.S.), Inc.*, 457 F.3d 963 (9th Cir. 2006)..........................11

15  *Poulos v. Naas Foods, Inc.*, 959 F.2d 69 (7th Cir. 1992) ........................................18

16  *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) ...........................................................11

*Villegas v. United States*, 926 F. Supp. 2d 1185 (E.D. Wash. 2013) ......................11

17

### STATE CASES

18  *CBR Event Decorators, Inc. v. Gates*, 962 N.E.2d 1276 (Ind. App.
2012) .......................................................................................................18

19  *Consumer's Co-op v. Olsen*, 419 N.W.2d 211 (Wis. 1988) ..............................16, 18

MOTION TO DISMISS SECOND AMENDED
COMPLAINT - i
No. 2:18-CV-00012-SMJ

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

*Hardy v. Claircom Comm'cns Grp. Inc.*, 937 P.2d 1128 (Wash. App. 1997) ........................................................................................8,9

*Massey v. Conseco Servs., L.L.C.*, 879 N.E.2d 605 (Ind. App. 2008) ....................16

*McCarthy Finance, Inc. v. Premera*, 347 P.3d 872 (Wash. 2015) ..................*passim*

*Meisel v. M & N Modern Hydraulic Press Co.*, 645 P.2d 689 (Wash. 1982) (en banc) .......................................................................16, 18

## STATUTES, RULES, AND REGULATIONS

Fed. R. Civ. P. 8(a) ....................................................................................1

Fed. R. Civ. P. 12(b)(6) ..............................................................................1

Wash. Admin. Code § 284-170-200 ...........................................................5

Wash. Rev. Code § 48.44.017(2) ................................................................5

Wash. Rev. Code § 48.44.020 .....................................................................5

## OTHER AUTHORITIES

Affordable Care Act ...................................................................................3

Restatement (Second) of Conflict of Laws § 307 ....................................17

Washington Consumer Protection Act ...........................................*passim*

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1    Defendants Coordinated Care Corporation (Coordinated Care) and Centene

2    Management Company (CMC), by undersigned counsel, hereby move to dismiss

3    the Second Amended Complaint in this action pursuant to Rules 8(a) and 12(b)(6)

4    of the Federal Rules of Civil Procedure.

5                          **<u>PRELIMINARY STATEMENT</u>**

6    In her third attempt to plead a valid claim, Plaintiff continues to assert that

7    she paid too much for health insurance because she allegedly did not get all the

8    benefits she was promised.  As such, her Second Amended Complaint seeks to

9    second-guess the work of the Washington State Office of the Insurance

10    Commissioner (Insurance Commissioner), which reviewed the insurance policies

11    and approved the insurance rates that Plaintiff paid.  Plaintiff is asking this Court to

12    step into the shoes of the Insurance Commissioner and pass on the adequacy of

13    health-insurance provider networks and the propriety of approved health-insurance

14    premiums.  Those are matters that the Insurance Commissioner is specifically

15    charged with overseeing—and is in fact overseeing.  Under recent unanimous

16    controlling authority from the Washington Supreme Court, Plaintiff's attempt at an

17    end-run around the Insurance Commissioner's authority is barred by the filed-rate

18    doctrine.  While Plaintiff's latest complaint primarily aims to plead around that

19    doctrine by reframing her damages claim, the revisions in fact only manage to

MOTION TO DISMISS SECOND AMENDED
COMPLAINT - 1
No. 2:18-CV-00012-SMJ

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1   affirm the doctrine's applicability.  This case should therefore be dismissed under

2   Washington's filed-rate doctrine.

3         In addition, the Second Amended Complaint fails to plead a breach of

4   contract.  Despite multiple attempts to replead, the Complaint's factual allegations

5   –focused on an alleged inadequate provider network and alleged failure to properly

6   reimburse claims—are still too thin to state a valid claim.

7          Finally, even if the Second Amended Complaint survives (and it should

8   not), the claims against Centene Management Company should be dismissed.

9   Plaintiff does not allege that she had any contractual relationship with CMC.  CMC

10  merely provides management and administrative services to Coordinated Care and

11  other Centene subsidiaries.  Plaintiff pleads no facts suggesting that CMC is

12  Coordinated Care's alter ego, and thus there is no basis for including CMC as a

13  defendant.

14        Because Plaintiff has been given three chances to plead a valid claim and has

15  failed to do so, dismissal should be with prejudice.

16                              **<u>BACKGROUND</u>**

17        Plaintiff filed her initial complaint on January 11, 2018.  After Defendants

18  moved to dismiss and the motion was fully briefed, on the eve of oral argument,

19  Plaintiff filed a First Amended Complaint, which was a whittled-down version of

MOTION TO DISMISS SECOND AMENDED
COMPLAINT - 2
No. 2:18-CV-00012-SMJ

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1    her initial complaint.  Plaintiff abandoned her Affordable Care Act and Texas state

2    law claims, dropped some defendants, and abandoned her attempt to certify a

3    "nationwide" class.  Once the case was limited to Washington claims, Defendants

4    again moved to dismiss, this time focusing on the Washington filed-rate doctrine.

5    Once again, Plaintiff chose to amend rather than defend the pleading she had filed.

6         In her Second Amended Complaint, Plaintiff again asserts claims for breach

7    of contract and unfair business practices under the Washington Consumer

8    Protection Act against Coordinated Care and CMC.  Plaintiff's claims still revolve

9    around her alleged inability to access certain providers and the denial of certain

10   claims.  She now purports to bring the action on behalf of "[a]ll persons in the state

11   of Washington who were insured by Defendants' Ambetter insurance product

12   which was purchased through an ACA [Health Insurance Exchange] from January

13   11, 2012 to the present."  SAC ¶ 59.  But, as set forth in detail below, the claims

14   remain deficient and should be dismissed.

15                              **ARGUMENT**

16        Plaintiff asserts that, by maintaining an allegedly inadequate provider

17   network and denying claims, Coordinated Care and CMC breached Plaintiff's

18   contract with Coordinated Care and violated the Washington Consumer Protection

19   Act.  The filed-rate doctrine precludes both of Plaintiff's claims because the claims

MOTION TO DISMISS SECOND AMENDED
COMPLAINT - 3
No. 2:18-CV-00012-SMJ

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
Telephone 206.624.0900

1   challenge insurance rates that were filed with and approved by the Insurance

2   Commissioner.  Even if Plaintiff's claims were not precluded by the filed-rate

3   doctrine, her breach-of-contract claim must be dismissed because it is inadequately

4   pled.  Finally, Plaintiff cannot maintain either claim against CMC on an alter-ego

5   theory, and CMC should be dismissed from the case.

6   **I.      The Filed-Rate Doctrine Precludes Both of Plaintiff's Claims.**

7           To adjudicate Plaintiff's claims would require this Court to second-guess

8   Coordinated Care's insurance rates, which have been approved by the Insurance

9   Commissioner.  In *McCarthy Finance, Inc. v. Premera*, 347 P.3d 872, 875 (Wash.

10  2015), the Washington Supreme Court unanimously held that the filed-rate

11  doctrine bars precisely this kind of judicial second-guessing of agency-regulated

12  ratemaking.  *Premera* is on all fours with this case, and mandates that Plaintiff's

13  claims be dismissed.

14          As the *Premera* court explained, the Insurance Commissioner is charged

15  with reviewing and approving health insurance premiums in Washington pursuant

16  to a detailed framework of state laws and regulations.  *Premera*, 347 P.3d at 875

17  (collecting relevant statutory and regulatory provisions).  The Insurance

18  Commissioner protects consumers from "benefits [that] . . . are 'unreasonable in

19  relation to the amount charged for the contract.'"  *Id.* (citations omitted).  To that

MOTION TO DISMISS SECOND AMENDED
COMPLAINT - 4
No. 2:18-CV-00012-SMJ

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1   end, the Insurance Commissioner is vested with the authority to approve or

2   disapprove health insurance contracts and rates on a variety of grounds.  Wash.

3   Rev. Code § 48.44.020.  One basis for disapproval is the failure to satisfy the

4   minimum health insurance standards set forth in state regulations, *id*. §

5   48.44.020(2)(f), including the requirements for maintaining adequate provider

6   networks.  Wash. Admin. Code § 284-170-200.  As part of the review process, the

7   Insurance Commissioner requires insurers to submit detailed information

8   concerning insurance rates and their ratemaking methodology.  Wash. Rev. Code

9   §§ 48.44.017(2) & 48.44.020(3).  Rates and modifications of rates must go through

10   the Insurance Commissioner's review and approval process before taking effect.

11   *Id*. § 48.44.020(3).

12        The filed-rate doctrine is a doctrine of deference.  It recognizes that courts

13   should not intrude into ratemaking processes that are overseen and carefully

14   regulated by agencies.  The doctrine is a "court-created rule to bar suits against

15   regulated utilities involving allegations concerning the reasonableness of the filed

16   rates.  This doctrine provides, in essence, that any 'filed rate'—a rate filed with and

17   approved by the governing regulatory agency—is per se reasonable." *Premera*,

18   347 P.3d at 875 (citation omitted).  Courts fashioned this limitation on their own

19   power with two purposes in mind: "(1) to preserve the agency's primary

MOTION TO DISMISS SECOND AMENDED
COMPLAINT - 5
No. 2:18-CV-00012-SMJ

1   jurisdiction to determine the reasonableness of rates, and (2) to insure that

2   regulated entities charge only those rates approved by the agency." *Id.* (citation

3   omitted).  To achieve those goals, courts will not reevaluate any filed and approved

4   rates "because doing so would inappropriately usurp the agency's role." *Id.* at 873.

5        In *Premera*, the Washington Supreme Court unanimously applied the filed-

6   rate doctrine to health insurance rates in a case analogous to this one.  *See* 347 P.3d

7   872; *see also Heaphy v. State Farm Mut. Auto. Ins. Co*., No. C05 5404RBL, 2006

8   WL 278556, at *2 (W.D. Wash. Feb. 2, 2006) (affirming that filed-rate doctrine

9   applies to claims related to insurance premiums).  In that case, plaintiffs alleged

10  that a group of insurers colluded and induced plaintiffs to purchase policies under

11  false pretenses and then charged them excessive and deceptive rates.  *Premera*,

12  347 P.3d at 873–74.  They sought compensation for the excessive premium

13  payments under the CPA.  *Id.* at 874.  The Washington Supreme Court affirmed

14  dismissal of the plaintiffs' claims based on the filed-rate doctrine.  The key

15  question was "whether the claims and damages related to agency-approved rates

16  . . . would necessarily require courts to reevaluate agency-approved rates." *Id.* at

17  875.  The court concluded that, to evaluate whether the premiums charged were

18  excessive, it would need to "determine what health insurance premiums would

19  have been reasonable for the Policyholders to pay as a baseline." *Id.* at 876.  Thus,

MOTION TO DISMISS SECOND AMENDED
COMPLAINT - 6
No. 2:18-CV-00012-SMJ

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1    the "requested damages cause[d] [plaintiffs'] CPA claims to run squarely against

2    the filed rate doctrine." *Id*.

3          That reasoning controls the outcome here: Plaintiff's Consumer Protection

4    Act and breach-of-contract claims run squarely into the filed-rate doctrine.

5    Plaintiff tries to avoid that problem by dividing her damages claims into three

6    alternative theories: (1) a full refund of premiums paid; (2) a "Partial Refund" or

7    the "difference in value" between the policy as represented and the policy as

8    delivered; and/or (3) "Out-of-Pocket Expenses" that Plaintiff allegedly paid for

9    covered services.  SAC ¶ 76 & ¶ 85.  With the first two damages theories, Plaintiff

10   is asserting that the policy she purchased was worth nothing or worth less than the

11   premiums paid, or in other words, that the premiums were excessive in relation to

12   the benefits received—and thus she is owed a "refund."[1]

13

---

14         [1] Plaintiff tacks on out-of-pocket expenses as an alternative to a full or

15   partial refund of premium payments without explaining what those expenses are or

16   how she incurred them.  It is not clear how the three forms of damages relate to

17   each other.  The additional claim for out-of-pocket expenses certainly does not

18   change the fact that Plaintiff's damages claim seeks to challenge rates filed with

19   and approved by the Insurance Commissioner.

MOTION TO DISMISS SECOND AMENDED
COMPLAINT - 7
No. 2:18-CV-00012-SMJ

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1    To assess the refund that Plaintiff requests, this Court would have to set a

2    "reasonable . . . baseline" for what Plaintiff should have paid for the policy and

3    then subtract that amount from the premiums charged by Coordinated Care.

4    *Premera*, 347 P.3d at 876.  Clearly, calculating a refund would force the Court to

5    reevaluate the insurance rates that the Insurance Commissioner has already

6    reviewed and approved.  *Premera* unanimously rejected a request for a refund of

7    excessive premium payments, and this Court should too.  *Premera*, 347 P.3d at

8    876; *see also Alpert v. Nationstar Mortgage LLC*, 243 F.Supp.3d 1176, 1183

9    (W.D. Wash. 2017) (applying the filed-rate doctrine to dismiss CPA and breach-

10   of-contract claims where plaintiff sought "difference between what he was charged

11   and the reasonable cost of insurance"); *Hardy v. Claircom Comm'cns Grp. Inc.*,

12   937 P.2d 1128, 495–96 (Wash. App. 1997) (dismissing CPA and breach-of-

13   contract claims because "court would necessarily have to consider the

14   reasonableness of the rates charged").

15        Plaintiff tries to address her clear filed-rate doctrine problem with a

16   disclaimer that she is "not challenging the reasonableness of the rates filed with the

17   Office of the Insurance Commissioner."  SAC ¶ 14.  According to Plaintiff, instead

18   of challenging rates, her complaint is that Defendants failed to "actually deliver[]

19   the insurance services for which its filed rates were approved by the [Insurance

MOTION TO DISMISS SECOND AMENDED
COMPLAINT - 8
No. 2:18-CV-00012-SMJ

1    Commissioner]," and that Defendants "misrepresented and made material

2    omissions regarding the coverage actually provided." *Id.*  This attempt to dodge

3    the filed-rate doctrine only serves to reinforce its applicability.  Excessive

4    insurance rates and inadequate services are simply two sides of the same coin.  As

5    the U.S. Supreme Court explained 20 years ago: "Rates . . . do not exist in

6    isolation.  They have meaning only when one knows the services to which they are

7    attached.  Any claim for excessive rates can be couched as a claim for inadequate

8    services and vice versa." *AT&T v. Cent. Office Tel., Inc.*, 524 U.S. 214, 223

9    (1998).  Accordingly, "the filed-rate doctrine . . . bars suits challenging services,

10   billing, or other practices when such challenges, if successful, would have the

11   effect of changing the filed tariff." *Brown v. MCI, WorldCom Network Servs.,*

12   *Inc.*, 277 F.3d 1166, 1170 (9th Cir. 2002) (citing *AT&T*).

13        Those principles apply here: despite characterizing her claims as focused on

14   the insurance benefits at issue, Plaintiff is still in effect alleging that the premiums

15   she paid were too high in light of the benefits provided.  By the same token, it does

16   not matter that Plaintiff cloaks her claims in the language of misrepresentation,

17   because the relief she seeks still requires the Court to reevaluate the reasonableness

18   of filed rates. *See Hardy*, 937 P.2d at 1132 (applying filed-rate doctrine despite

19

MOTION TO DISMISS SECOND AMENDED
COMPLAINT - 9
No. 2:18-CV-00012-SMJ

1    plaintiffs' argument that they are "specifically challenging the allegedly deceptive

2    advertising practices of [defendants], not the underlying rate").

3        Not only is the filed-rate doctrine an exact fit with Plaintiff's claims, but the

4    policy rationale behind the doctrine—judicial deference to the regulatory agency in

5    overseeing insurance rates—also applies with particular force here. *See Premera*,

6    347 P.3d at 875.  As the Complaint describes, the Insurance Commissioner

7    currently is reviewing Coordinated Care's provider networks and related issues.

8    SAC ¶¶ 15–20.  It does not make sense to allow a private litigant to police network

9    adequacy when the Insurance Commissioner already is working with Coordinated

10   Care on that very issue.  The Insurance Commissioner is doing his job—ensuring

11   that the benefits provided under the policies correspond to the rates charged.

12   Dismissing Plaintiff's claims under the filed-rate doctrine would not leave her

13   without recourse—she can bring complaints directly to Coordinated Care or the

14   Insurance Commissioner and receive appropriate remedies.  Indeed, Ms. Harvey

15   admits that she has successfully availed herself of remedies available under her

16   insurance contract, including making complaints to Coordinated Care and the

17   Insurance Commissioner.  SAC ¶ 56.  This Court need not step into this ongoing

18   administrative process.  Instead, it should reject Plaintiff's challenge to rates

19

MOTION TO DISMISS SECOND AMENDED
COMPLAINT - 10
No. 2:18-CV-00012-SMJ

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1   approved by the Insurance Commissioner and dismiss Plaintiff's Second Amended

2   Complaint as barred by the filed-rate doctrine.

3   **II.    The Second Amended Complaint Fails To Adequately Plead Breach of**

4           **Contract.**

5           Even if Plaintiff's breach-of-contract claim were to survive the filed-rate

6   doctrine, it still would fail on its own terms.  Despite filing two amended

7   complaints, Plaintiff has made next to no attempt to improve her deficient breach-

8   of-contract claim.  To survive a motion to dismiss, Plaintiff's claims "must contain

9   sufficient allegations of underlying facts to give fair notice and to enable the

10  opposing party to defend itself effectively."  *Starr v. Baca*, 652 F.3d 1202, 1216

11  (9th Cir. 2011).  Put slightly differently, the complaint's allegations must "give the

12  defendant fair notice of what the plaintiff's claim is and the grounds upon which it

13  rests."  *Pickern v. Pier 1 Imps. (U.S.), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006)

14  (internal quotation marks omitted).  Here, the allegations fail under these

15  standards.

16          The Second Amended Complaint plucks from the insurance contract some

17  broad language delineating members' rights, SAC ¶¶ 69–70, and makes a series of

18  "mere conclusory statements" that Coordinated Care failed to meet those

19  obligations. *Villegas v. United States*, 926 F. Supp. 2d 1185, 1195 (E.D. Wash.

MOTION TO DISMISS SECOND AMENDED
COMPLAINT - 11
No. 2:18-CV-00012-SMJ

1    2013) (citation and internal quotation marks omitted).  The only specific

2    allegations concern one instance in which Ms. Harvey allegedly could not access

3    an in-network emergency room physician and one other instance in which part of

4    her claim for a covered procedure was denied.  SAC ¶¶ 54–55.  Plaintiff neglects to

5    articulate how these two examples, even if true, show that Coordinated Care's

6    provider network as a whole was inadequate.  Taking Plaintiff's tack, any

7    policyholder could transform small-scale grievances into a federal case of breach

8    of contract.  That approach gives Coordinated Care no notice of *how* the alleged

9    conduct breached the cited contractual provisions or *how* Coordinated Care fell

10   short of any obligations.

11         In fact, the health insurance contract itself shows that individual grievances

12   like Ms. Harvey's do not rise to the level of a breach of contract. Coordinated Care

13   anticipated that insureds may experience issues with accessing providers and built

14   into the contract a grievance and appeal process to address those issues.  Second

15   Decl. of Tricia Dinkelman ("Reply Decl.") Ex. 1, ECF No. 33-2 at 74–78 (excerpts

16   from contract between Coordinated Care Corp. and Plaintiff Harvey).  That process

17   provides for an internal appeal of denied claims and, if a policyholder is not

18   satisfied with the outcome, further external review by an independent claims

19   review organization.  *Id*.  The inclusion of this detailed procedure shows that the

MOTION TO DISMISS SECOND AMENDED
COMPLAINT - 12
No. 2:18-CV-00012-SMJ

1    parties to the contract did not intend for issues that could be handled through the

2    grievance process to turn into lawsuits in federal court.  As noted above, Ms.

3    Harvey admits that she successfully availed herself of the appeal process on

4    multiple occasions.  SAC ¶ 56. Where the contract expressly provides for appeals

5    to resolve disputes over benefit determinations, it cannot be a breach that Plaintiff

6    was "forced to complete the process of appeal." *Id.*  Accordingly, Plaintiff should

7    not be allowed to bring a separate contract claim based on issues she already

8    addressed through that process.

9         Moreover, as to Ms. Harvey's allegation that she was billed for out-of-

10   network emergency room services, her contract with Coordinated Care expressly

11   put her on notice of this possibility: "When receiving care at an in-network

12   Ambetter Hospital, *some Hospital-Based Providers may not be in-network. . . .*

13   *While an in-network Hospital's emergency department is contracted with*

14   *Ambetter, the Providers within the department may not be.*  As a result, these out-

15   of-network Hospital-Based Providers *may bill you for the difference* between what

16   Ambetter pays them and their total bill – this is known as Balance Billing." Reply

17   Decl. Ex. 2 at 32 (emphasis added).  In light of this language in Plaintiff's contract,

18   the fact that Plaintiff's emergency room provider billed Ms. Harvey cannot be a

19   breach of her contract with Coordinated Care.

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1      Plaintiff's allegation of damages is likewise deficient.  By requesting three

2   forms of compensatory damages, Plaintiff is demanding a full or partial refund of

3   her premium payments and/or reimbursement for out-of-pocket expenses she

4   allegedly incurred for care that her plan should have covered.  None of those is a

5   valid theory of damages.  First, Plaintiff is not eligible for a full refund or the

6   "Benefit of the Bargain."  SAC ¶ 76.  That would only be appropriate if Plaintiff

7   had obtained no benefits at all under her policy, which is not the case here.  The

8   Complaint in fact describes services that Plaintiff received under her plan and

9   payments she received after appealing denied claims.  *Id*. ¶¶ 54–56.

10      Second, Plaintiff's damages theories are impermissibly vague.  Her claim

11   amounts to saying that some undefined portion of what Plaintiff paid Coordinated

12   Care and/or some undefined out-of-pocket expenses represents Plaintiff's damages.

13   In other words, Defendants allegedly owe Plaintiff some or all of whatever cost she

14   incurred for covered care.  This claim provides no notice of what compensation

15   Plaintiff is seeking or how that compensation is tied to the alleged contractual

16   breach, making it too vague to support a claim for relief.  *See Adolf Jewelers, Inc.*

17   *v. Jewelers Mut. Ins. Co.*, No. 3:08-CV-233, 2008 WL 2857191, at *4 (E.D. Va.

18   July 21, 2008) ("[A]llegations that [plaintiff] (1) incurred unnecessary and

19   considerable costs and other damages, (2) was inconvenienced, and (3) lost time do

MOTION TO DISMISS SECOND AMENDED
COMPLAINT - 14
No. 2:18-CV-00012-SMJ

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1  not give [defendant insurance company] fair notice of the grounds for [plaintiff's]

2  claim." (internal quotation marks omitted)).  Plaintiff's breach-of-contract claim—

3  despite being presented a third time—remains facially inadequate and should be

4  dismissed.

5  **III.    Plaintiff Fails To State a Claim Against CMC Under an Alter Ego**

6          **Theory.**

7          As an apparent admission that her alter ego theory against Centene

8  Corporation in the original complaint was unworkable, Plaintiff dropped that entity

9  as a defendant.  But Plaintiff has added Centene Management Company as a

10  defendant and now advances an even more tenuous alter ego theory—that this

11  Court should pierce the veils of both Coordinated Care *and* CMC through their

12  connection with Centene Corporation, and hold CMC liable for Coordinated Care's

13  alleged wrongdoing.

14          This new alter ego theory fails like the first one.  Plaintiff again ignores a

15  foundational requirement of the alter ego doctrine—that the corporate form must

16  be respected unless it has been misused to commit a fraud or injustice.  Plaintiff

17  makes no allegations at all explaining how the relationship between Coordinated

18  Care and CMC effects any fraud or injustice on Plaintiff.  But even as to the other

19

MOTION TO DISMISS SECOND AMENDED
COMPLAINT - 15
No. 2:18-CV-00012-SMJ

1    main requirement of the alter ego doctrine—the total domination and control of

2    one corporation by another—Plaintiff's allegations fall short.

3        **A.    Plaintiff Fails To Allege Fraud or Injustice.**

4        Whatever the relationship between two related corporate entities, veil-

5    piercing is not appropriate unless it is required to avoid a fraud or injustice on the

6    plaintiff.  *See, e.g.*, *Meisel v. M & N Modern Hydraulic Press Co.*, 645 P.2d 689,

7    692 (Wash. 1982) (en banc) (recognizing that veil-piercing is appropriate only

8    where it is "necessary and required to prevent unjustified loss to the injured party"

9    (internal quotation marks and citation omitted)); *Massey v. Conseco Servs., L.L.C.*,

10   879 N.E.2d 605, 609 (Ind. App. 2008) (requiring that plaintiff show that "the

11   misuse of the corporate form would constitute a fraud or promote injustice"

12   (internal quotation marks and citation omitted)); *Consumer's Co-op v. Olsen*, 419

13   N.W.2d 211, 214 (Wis. 1988) (requiring plaintiff to show that "applying the

14   corporate fiction would accomplish some fraudulent purpose, operate as a

15   constructive fraud, or defeat some strong equitable claim" (internal quotation

16   marks and citation omitted)).[2]

---

17       [2] Because Plaintiff seeks to disregard the corporate separateness of both

18   Coordinated Care (an Indiana corporation) and CMC (a Wisconsin corporation),

19   Indiana and Wisconsin law likely apply.  *See* Restatement (Second) of Conflict of

MOTION TO DISMISS SECOND AMENDED
COMPLAINT - 16
No. 2:18-CV-00012-SMJ

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1    The Second Amended Complaint lacks any allegations that suggest this

2    prong of the alter ego inquiry is met.  The sole factual basis of Plaintiff's alter ego

3    case is a one-paragraph cut-and-paste from a financial statement, which says that

4    Coordinated Care contracts with CMC for the provision of various "management

5    services."  SAC ¶ 2.  From that point forward, Plaintiff proceeds to ignore any

6    distinction between Coordinated Care and CMC.  *See id.* (stating that the term

7    "Centene" is used to "refer to the joint activities of Centene Management

8    Company, LLC and Coordinated Care").

9    Even if such a management services agreement were improper (as is shown

10   below, *see infra* p. 19, it is not), Plaintiff fails to suggest any reason why that

11   arrangement is fraudulent or unjust as to her.  Notably absent from the Second

12   Amended Complaint is any allegation that Coordinated Care is undercapitalized or

13   unable financially to provide Plaintiff appropriate relief.  In fact, Plaintiff's

14   allegations suggest the opposite; she states that she has successfully used the

15   appeal process provided for in her insurance contract to secure reimbursement

16   from Coordinated Care.  SAC ¶ 56.  This is reason enough to dismiss Plaintiff's

17   Laws § 307 (law of "state of incorporation" applies to questions of shareholder

18   liability).  The alter ego tests of Indiana, Wisconsin, and Washington are broadly

19   similar, and Plaintiff's alter ego allegations would fail under each one.

MOTION TO DISMISS SECOND AMENDED
COMPLAINT - 17
No. 2:18-CV-00012-SMJ

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1    alter ego claim.  If Coordinated Care can provide Plaintiff sufficient relief, then

2    veil-piercing clearly is not necessary.  *See, e.g.*, *Poulos v. Naas Foods, Inc.*, 959

3    F.2d 69, 74 (7th Cir. 1992) (Wisconsin law) (recognizing that veil-piercing was not

4    "required to avoid . . . possible fraud" because plaintiff could not allege "that the

5    assets of [the subsidiary] would be insufficient to satisfy a judgment"); *Phillips v.*

6    *USAA Cas. Ins. Co.*, No. 2:16-CV-0381-TOR, 2017 WL 26907, at *3 (E.D. Wash.

7    Jan. 3, 2017) (Washington law) (declining to add parent entity under veil-piercing

8    theory because piercing was not "necessary to prevent an unjustified loss," as its

9    subsidiary "is willing to pay the amount . . . owed").

10          Moreover, Plaintiff has not pled any causal connection between Defendants'

11    corporate form and Plaintiff's alleged injury, nor has Plaintiff pled any misuse of

12    the corporate form.  *See, e.g.*, *Meisel*, 645 P.2d at 693 ("Intentional misconduct

13    must be the cause of the harm that is avoided by disregard."); *CBR Event*

14    *Decorators, Inc. v. Gates*, 962 N.E.2d 1276, 1282–83 (Ind. App. 2012) ("[T]he

15    fraud or injustice alleged by a party seeking to pierce the corporate veil must be

16    caused by, or result from, misuse of the corporate form."); *Consumer's Co-op*, 419

17    N.W.2d at 218 (misuse of corporate form "must proximately cause the injury or

18    unjust loss complained of").  Plaintiff alleges that she was harmed because

19    Coordinated Care did not appropriately reimburse her for various treatments.  SAC

MOTION TO DISMISS SECOND AMENDED
COMPLAINT - 18
No. 2:18-CV-00012-SMJ

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1    ¶¶ 54–55.  These allegations have nothing at all to do with the relationship between

2    Coordinated Care and CMC.

3        **B.    Plaintiff Fails To Allege Complete Domination.**

4            Plaintiff does no better on the other prong of the alter ego test, which

5    requires a showing that one company "complete[ly] dominat[ed]" the other.

6    *Consumer's Co-op*, 419 N.W.2d at 217–18.  The only basis for Plaintiff's

7    suggestion that CMC dominates Coordinated Care is that, under a "management

8    services agreement," CMC provides Coordinated Care a number of management

9    and administrative services.  SAC ¶ 2.  These arrangements are common and not

10   indicative of a failure to respect corporate separateness.  *See In re Western States*

11   *Wholesale Natural Gas Antitrust Litig.*, No. 03-cv-1431 *et al.*, 2009 WL 455658, at

12   *11–*12 (D. Nev. Feb. 23, 2009); *Everitt v. Dover Downs Ent'mt Inc.*, No. 98-cv-

13   6116, 1999 WL 374163, at *6 (E.D. Pa. June 9, 1999).  As the Court in *Everitt*

14   noted, in a traditional holding company structure (like Centene's), it "makes

15   economic sense" for "[c]ertain activities [to be] centralized."  *Everitt*, 1999 WL

16   374163, at *6.  That is all that Plaintiff has alleged that Defendants have done.

17   Accordingly, her control allegations fall far short, and CMC should be dismissed.

18

19

MOTION TO DISMISS SECOND AMENDED
COMPLAINT - 19
No. 2:18-CV-00012-SMJ

**STOEL RIVES** LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1

## <u>CONCLUSION</u>

2          For the foregoing reasons, the Court should dismiss the Second Amended

3     Complaint as to all Defendants with prejudice.

4     Dated:  September 12, 2018          Respectfully submitted,

5                                        STOEL RIVES LLP

6                                        By:   /s/ Maren R. Norton
                                         Maren R. Norton
7                                        600 University Street, Suite 3600
                                         Seattle, WA  98101
8                                        Tel.:  206-624-0900
                                         maren.norton@stoel.com
9
                                         Brendan V. Sullivan, Jr. (admitted *Pro Hac*
10                                       *Vice*)
                                         Steven M. Cady (admitted *Pro Hac Vice*)
11                                       WILLIAMS & CONNOLLY LLP
                                         725 Twelfth Street, N.W.
12                                       Washington, D.C. 20005
                                         Tel.: 202-434-5321
13                                       Fax: 202-434-5029
                                         scady@wc.com
14
                                         *Attorneys for Defendants*
15

16

17

18

19

MOTION TO DISMISS SECOND AMENDED
COMPLAINT - 20
No. 2:18-CV-00012-SMJ

**STOEL RIVES LLP**
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA  98101
*Telephone 206.624.0900*

1

## <u>CERTIFICATE OF SERVICE</u>

2        I hereby certify that on September 12, 2018, I electronically filed the

3    foregoing with the Clerk of the Court using the CM/ECF System, which in turn

4    automatically sent a Notice of Electronic Filing to all parties in the case who are

5    registered users of the CM/ECF system.  The Notice of Electronic Filing for the

6    foregoing specifically identifies recipients of electronic notice.

7

8                                          */s/ Maren R. Norton*
                                         Maren R. Norton
9                                        600 University Street, Suite 3600
                                         Seattle, WA  98101
10                                        Tel.:  206-624-0900
                                         maren.norton@stoel.com

11

12

13

14

15

16

17

18

19

MOTION TO DISMISS SECOND AMENDED
COMPLAINT - 21
No. 2:18-CV-00012-SMJ