Beth E. Terrell, WSBA #26759
Jennifer R. Murray, WSBA #36983
Elizabeth A. Adams, WSBA #49175
Attorneys for Plaintiff and the Class
TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603
Facsimile: (206) 319-5450
Email: bterrell@terrellmarshall.com
Email: jmurray@terrellmarshall.com
Email: eadams@terrellmarshall.com

[Additional Counsel Appear on Signature Page]

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CYNTHIA HARVEY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CENTENE MANAGEMENT COMPANY, LLC and COORDINATED CARE CORPORATION,<br><br>Defendants. | NO. 2:18-cv-00012-SMJ<br><br>**THIRD AMENDED COMPLAINT – CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Cynthia Harvey ("Plaintiff") brings this class action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), individually and on behalf of all similarly-situated persons, who were or are Ambetter policyholders from January 11, 2012 to the present, against defendants Centene Management

THIRD AMENDED COMPLAINT – CLASS ACTION - 1
CASE NO. 2:18-CV-00012-SMJ

Company, LLC ("Centene") and Coordinated Care Corporation ("Coordinated Care") (together, "Defendants"). Plaintiff's allegations are based on information and belief, except for the allegations concerning Plaintiff's own circumstances.

## I. PARTIES

1.      Plaintiff Cynthia Harvey is an individual residing in Spokane, Washington. Ms. Harvey bought Centene's Ambetter Health Insurance Policy, Silver Metal type, from its Washington subsidiary Coordinated Care on the Washington Benefit Health Exchange in December 2016. Ms. Harvey's Ambetter policy, for which she paid and continues to pay premiums, went into effect on January 1, 2017.

2.      Defendant Centene Management Company, LLC is a Wisconsin corporation with its principal place of business at 7700 Forsyth Boulevard, St. Louis, Missouri 63105. Centene is a wholly owned subsidiary of Centene Corporation, a holding company, itself having no employees, which is the corporate pinnacle of a set of wholly-owned subsidiaries who, collectively, constitute one of, and hold themselves out to the public as one of, the nation's largest insurers providing coverage through the ACA and which has steadily been expanding its operations around the country. Centene Management Company, LLC is corporate entity through which Centene Corporation effectuates the common policies and practices and conduct of its subsidiaries and through which insurance

THIRD AMENDED COMPLAINT – CLASS ACTION - 2
CASE NO. 2:18-CV-00012-SMJ

1   is offered by the "Centene" entity across the nation. As here relevant, Centene

2   effectuates, controls and handles the operations of Defendant Coordinated Care so

3   that Coordinated Care is a shell and alter ego of Centene, and Centene and

4   Coordinate Care operate so in concert and together in a common enterprise and

5   through related activities so that the actions of one may be imputed to the other

6   and/or so that their corporate formality should be disregarded for purposes of

7   attributing their unlawful conduct to Centene. To all intents and purposes the

8   activities of Coordinated Care have been abdicated to Centene and the nature by

9   which Centene is the entity which entirely controls the activities of Coordinated

10  Care is admitted and set forth in statutory financial statement:

11
12  **(w) General Administrative Expenses**

    The Company has a management services agreement with Centene Management Company, LLC
    (CMC). Under the agreement, the Company pays CMC a management fee based on a percentage of
    its monthly revenue, for which CMC provides the services necessary to manage the business
    operations of the Company and assumes responsibility for all associated costs. CMC assumes
13  responsibility for program planning and development, management information systems, financial
    systems and services, claims administration, provider and enrollee services and records, case
    management, care coordination, utilization and peer review, and quality assurance/quality
    improvement. In addition, under the agreement the Company also pays other direct costs associated
14  with the business.

15  As used hereinafter "Centene" shall refer to the joint activities of Centene

16  Management Company, LLC and Coordinated Care.

17          3.      Defendant Coordinated Care is an Indiana corporation with its

18  principal place of business at 1145 Broadway, Suite 300, Tacoma, Washington

19  98402. Coordinated Care is licensed to sell health insurance in the State of

20  Washington. Coordinated Care is a wholly-owned subsidiary of Centene

THIRD AMENDED COMPLAINT – CLASS ACTION - 3
CASE NO. 2:18-CV-00012-SMJ

1   Corporation and operates as the "Centene" presence in the State of Washington,

2   including offering Ambetter insurance product. According to Centene Corporation,

3   Coordinated Care manages "our Health Benefit Exchange insurance plan:

4   Ambetter" in the State of Washington.

5   https://www.centene.com/states/washington.html (last accessed 1/8/18).

## II. JURISDICTION AND VENUE

7       4.      This Court has subject matter jurisdiction over this proposed class

action pursuant to 28 U.S.C. § 1332(d)(2). The amount in controversy, exclusive of

interest and costs, exceeds the sum or value of $5,000,000 and at least one member

of the proposed class is a citizen of a state other than Washington, Minnesota, and

Indiana, which are Defendants' states of citizenship.

12      5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) and (b)

because a substantial part of the events or omissions giving rise to the Plaintiff's

claims occurred in this judicial district. Venue is also proper under 18 U.S.C.

§ 1965(a) because the Defendants transact substantial business in this district.

16      6.      This Court has authority to grant the requested declaratory relief

pursuant to 28 U.S.C. §§ 2201 and 2202.

### III. FACTUAL ALLEGATIONS

**A.      The "Centene" Business Model**

7.      The "Centene" entities, as reported in the combined and consolidated Centene Corporation financial statements, earned over $40 billion in 2016, and their revenues continue to increase, jumping 69% in the first quarter of 2017.

8.      As throughout the rest of the country, in the State of Washington, the Centene business model is to target low-income customers who qualify for substantial government subsidies while simultaneously providing coverage well below both what is required by law and what Centene represents to customers.

9.      Ambetter policyholders around the nation report strikingly similar experiences: After purchasing an Ambetter insurance plan, they learn that the provider network Centene represented was available to Ambetter policyholders was in material measure, if not largely, fictitious. Members have difficulty finding – and in many cases cannot find – medical providers who will accept Ambetter insurance.

10.      Centene misrepresents the number, location, and existence of purported providers by listing physicians, medical groups, and other providers – some of whom have specifically asked to be removed – as participants in their network and by listing nurses and other non-physicians as primary care providers. Defendants have even copied entire physician directories into their purported

network lists for some areas, and have, in fact, listed medical students as part of their primary care provider network.

11.    Defendants fail to disclose the true limitations of the coverage provided by its Ambetter policies. Ambetter policyholders learn of the limitations on available providers only after they commit to the insurance and are locked into the Ambetter policy. Defendants' sales materials omit the fact that Centene does not adequately monitor their network of providers. The Ambetter documentation also fails to disclose that Centene does not consistently provide access to "medically necessary care on a reasonable basis" without charging for out-of-network services.

12.    Defendants also fail to reimburse medical providers' legitimate claims, routinely citing "insufficient diagnostic" evidence as the reason. As a result of Centene failing to pay providers for legitimate claims, a large number of medical providers reject Ambetter insurance, further reducing the provider network available to Ambetter's members.

13.    Centene has been sued by medical providers (as well as shareholders) for failing to fulfill their legal responsibilities, and this lawsuit seeks to compel redress from Centene for its failure to comply with the law and the terms of its contracts on behalf of Ambetter policyholders.

THIRD AMENDED COMPLAINT – CLASS ACTION - 6
CASE NO. 2:18-CV-00012-SMJ

1   14.    To be clear, Plaintiff and the Class are not challenging the

2   reasonableness of the rates filed with the Office of the Insurance Commissioner.

3   Had Centene actually delivered the insurance services for which its filed rates were

4   approved by the OIC, Plaintiff and the Class would not assert a claim. But Centene

5   misrepresented and made material omissions regarding the coverage actually

6   provided by its Ambetter policy, which did not deliver the insurance services for

7   which the OIC approved its filed rates. Centene therefore breached its insurance

8   contracts with Plaintiff and the Class by failing to deliver the insurance services

9   promised and further engaged in unfair and deceptive practices by misrepresenting

10  and making material omissions regarding the true scope of the Ambetter insurance

11  policy.

12  **B.    The December 2017 Washington State Consent Order**

13  15.    Further evidence of Ambetter's wrongful and illegal actions is

14  captured by the Washington State Office of the Insurance Commissioner's order of

15  December 12, 2017 requiring Coordinated Care to stop selling the Centene 2018

16  Ambetter plans. The Insurance Commissioner intervened after receiving over 100

17  consumer complaints regarding a lack of doctors in the Ambetter policy network

18  and other deficiencies and after doing its own investigation.

19  16.    On December 15, 2017, Coordinated Care entered into a consent order

20  with the Insurance Commissioner. The order states that "[b]asked upon the number

THIRD AMENDED COMPLAINT – CLASS ACTION - 7
CASE NO. 2:18-CV-00012-SMJ

1  of consumer complaints and information gathered by the Insurance

2  Commissioner's staff in investigating the consumer complaints, there was

3  sufficient evidence to indicate that the Company failed to monitor its network of

4  providers, failed to report its inadequate network to the Insurance Commissioner,

5  and failed to file a timely alternative access delivery request to ensure that

6  consumers receive access to healthcare providers."

7       17.    The order also states that Coordinated Care is legally required to

8  provide access to "medically necessary care on a reasonable basis" without

9  charging for out-of-network services. The Insurance Commissioner stated that the

10  order required that Defendants no longer send customers "surprise" bills, including

11  charges for out-of-network care. The consent order requires Defendants to confirm

12  that erroneous billing of customers is corrected and provides for ongoing

13  monitoring.

14       18.    The Insurance Commissioner levied a $1.5 million fine with $1

15  million suspended pending no further violations over the next two years.

16       19.    Following the order, Centene issued a press release stating that it was

17  in the process of addressing "known issues in [its] network."

18       20.    Coordinated Care also sent a letter to Plaintiff and the Class

19  acknowledging that "members may have had difficulty in obtaining health benefits,

20  care, or were charged more for services than expected." Letter from Ambetter by

1  Coordinated Care to Ambetter policyholders in Washington (May 17, 2018) (on

2  file with Plaintiff). The letter further admitted several issues alleged in this

3  Complaint, including:

> [Policyholders] needed care and had to seek care from an out-of-network provider due to problems locating a nearby in-network Ambetter provider;

> [Policyholders] received care from an in-network provider, and feel that [they] were billed or paid amounts in excess of [their] deductible and/or coinsurance.

> [Policyholders] received emergency care or authorized hospital or outpatient surgery services, and feel [they] were billed for amounts in excess of [their] deductible because [they] were seen by an out-of-network provider, such as an emergency room doctor, anesthesiologist, radiologist or for lab/ pathology services.

**C.    The "Centene" Entities**

21.    The "Centene" companies, together as collectively presented to the public, is or has been the largest Medicaid Managed Care Organization in the country. It describes itself as a "platform for government-sponsored programs" serving low-income populations, including some of the nation's most vulnerable people. When the ACA Exchanges became operational in 2014, Centene expanded the operations of the Centene Corporation owned entities by introducing the Ambetter insurance product, developed specifically for the ACA.

22.    The Centene coordinated entity insures more than 1 million people through the ACA's state-based health insurance exchanges. About 90% of the

THIRD AMENDED COMPLAINT – CLASS ACTION - 9
CASE NO. 2:18-CV-00012-SMJ

marketplace enrollees are eligible for subsidies. The federal government pays cost-sharing subsidies directly to the insurer.

23.    Centene's profitability in the ACA marketplace is due in large part to its exploitation of the ACA subsidy program and other government support, while failing to provide the minimal coverage required.

24.    On the ACA exchanges, it is expected that a number of customers will switch in and out of eligibility or will change insurance providers yearly while shopping for policies. This phenomenon is known as "churn." Consequently, every year will bring Defendants new patients unfamiliar with the shoddy nature of Ambetter coverage. "Our game plan was churn. That's it," according to Centene Corporation's CEO. In addition, some customers will not need to utilize medical practitioners in any given year. These customers may unwittingly continue to purchase Ambetter, discovering its inferior coverage only when they have a need to obtain medical care.

25.    Ambetter is offered in 15 states. Those states include: Arkansas, Arizona, Florida, Georgia, Illinois, Indiana, Kansas, Massachusetts, Mississippi, Missouri, New Hampshire, Nevada, Ohio, Texas, and Washington. https://www.ambetterhealth.com/health-plans/select-your-state.html (last accessed 1/8/2018).

26.    Ambetter "is [Centene's] suite of health insurance product offerings for the Health Insurance Marketplace." The "family" of "Ambetter Health Plans" are certified as Qualified Health Plan issuers in the Health Insurance Marketplace." https://www.ambetterhealth.com/about-us.html (last accessed 1/8/2018).

27.    The day-to-day operations of the various "Centene" entities are controlled by and through Centene – down to the details. For example, the subsidiaries' web sites each contain language describing Ambetter in substantially the same language, and often verbatim.

28.    On the universal Ambetter web site (as opposed to the state-specific sites that each subsidiary posts), it is represented that "Our Ambetter products are offered by Centene Corporation … on a local level." https://www.ambetterhealth.com/about-us.html (last accessed 1/8/2018).

**D.    The ACA's Statutory Scheme Governing Health Insurance**

29.    The ACA was enacted by the United States Congress in March 2010 for the express purpose of providing affordable health care coverage to all citizens, regardless of their pre-existing health conditions or other barriers to coverage. 42 U.S.C. §18001, *et seq*. As part of its overhaul of health insurance, the ACA enacted a series of provisions aimed at ensuring minimum levels of health care coverage, termed the "Patient's Bill of Rights." The requirements include, among other things, giving patients the right to choose a doctor, the provision of no-cost

1    preventive care, and the ending of pre-existing condition exclusions. 42 U.S.C. §§

2    300gg-1 - 300gg-19a, https://www.cms.gov/CCIIO/Programs-and-

3    Initiatives/Health-Insurance-Market-Reforms/Patients-Bill-of-Rights.html (last

4    accessed 1/8/2018); *see also* 45 C.F.R. Part 147 (Department of Health and Human

5    Services implementing regulations for these rights).

6        30.    Under the ACA, a Health Insurance Exchange ("HIE"), also known as

7    the Health Insurance Marketplace ("HIM"), is a platform through which plans that

8    meet ACA requirements are sold to consumers. 42 U.S.C. § 18031(b). A Qualified

9    Health Plan ("QHP"), as defined in the ACA, is a major medical health insurance

10   plan that covers all the mandatory benefits of the ACA and may be sold through a

11   state HIM. A QHP is also eligible to be purchased with cost-sharing and premium

12   tax credit subsidies.

13       31.    All QHPs offered in the Marketplace must cover 10 categories of

14   "essential health benefits" with limited cost-sharing, including:

15           a.    Ambulatory patient services (outpatient care one can get

16                 without being admitted to a hospital);

17           b.    Emergency services;

18           c.    Hospitalization (surgery, overnight stays, etc.);

19           d.    Pregnancy, maternity, and newborn care;

20

THIRD AMENDED COMPLAINT – CLASS ACTION - 12
CASE NO. 2:18-CV-00012-SMJ

1        e.     Mental health and substance use disorder services, including

2             behavioral health treatment;

3        f.     Prescription drugs;

4        g.     Rehabilitative and habilitative services and devices (services

5             and devices for people with injuries, disabilities, or chronic

6             conditions);

7        h.     Laboratory services;

8        i.     Preventive and wellness services and chronic disease

9             management; and

10       j.     Pediatric services, including oral and vision care (excluding

11            adult dental and vision).

12 42 U.S.C. § 18022; 42 U.S.C. § 300gg-13.

13     32.    These "essential health benefits" – including their limitations on "cost

14 sharing" (deductibles, coinsurance, copayments, and similar charges) – are

15 minimum requirements for all Marketplace plans.  42 U.S.C. § 18022.

16 **E.    Other ACA Requirements and Prohibitions**

17     33.    To help ensure that plans offered on the ACA marketplaces serve the

18 needs of enrollees, the ACA established a national standard for network adequacy.

19 42 U.S.C. § 18031(c)(1)(B); 45 C.F.R. § 147.200(a)(2)(i)(K). Marketplace plans

20 must maintain "a network that is sufficient in number and types of providers" so

THIRD AMENDED COMPLAINT – CLASS ACTION - 13
CASE NO. 2:18-CV-00012-SMJ

that "all services will be accessible without unreasonable delay," and insurers are required to disclose their provider directories to the marketplace for online publication. 45 C.F.R. § 156.230(b)(2). In addition, the health law requires marketplace plans to include within their networks a sufficient number and geographic distribution of "essential community providers" that serve predominantly low-income, medically-underserved individuals. 42 U.S.C. § 18031(c)(1)(C); 45 C.F.R. § 156.235.

34.    A health insurance issuer offering individual health insurance coverage must also provide a current and accurate summary of benefits and coverage to individuals covered under the policy upon receiving an application for any health insurance policy. The required summary must provide, among other things:

       a.    A description of the coverage, including cost sharing, for each category of benefits identified by the Secretary in guidance;

       b.    The exceptions, reductions, and limitations of the coverage;

       c.    Coverage examples, in accordance with the rules of this section;

       d.    An internet address with a list of providers; and

       e.    An internet address providing information about prescription drug coverage.

45 C.F.R. § 147.200(a)(2).

1   35.    The ACA does not displace state laws that impose stricter

2  requirements on health care service plans than those imposed by the ACA, and it

3  expressly preserves state laws that offer additional consumer protections that do

4  not "prevent the application" of any ACA requirement.

**F.    State Law Applicable to ACA Insurance Plans**

5

6   36.    Most states – including the State of Washington – have laws

7  prohibiting deceptive marketing of insurance plans and failing to provide adequate

8  insurance benefits.

9  Washington ACA Health Plan Requirements and Prohibitions

10   37.    Washington State law requires that insurers' health plan networks

11  meet additional state requirements, including providing "a comprehensive range of

12  primary, specialty, institutional, and ancillary services" that "are readily available"

13  to health plan enrollees. WAC 284-170-200(1); *see also* WAC 284-170-270. This

14  includes ensuring that each provider network includes a sufficient number of

15  certain types of medical professionals, such as women's health care practitioners

16  (RCW 48.42.100), tribal health care providers (WAC 284-170-200(9)), primary

17  care doctors (WAC 284-170-200(1)), and mental health providers (WAC 284-170-

18  200(11)). Washington law also requires that insurers' plan networks maintain

19  sufficient numbers of each type of provider to meet anticipated consumer needs.

20  WAC 284-170-200(4).

38.     In addition, members must have adequate choice among health care providers, including those providers which must be included in the network by law. WAC 284-170-200(2).

39.     Washington law requires disclosure of any restrictions or limitations on access to network providers and requires that the provider directory must be updated at least monthly. WAC 284-170-200(8); WAC 284-170-260.

40.     Washington law prohibits any false or deceptive advertising of health insurance plans, as well as the misrepresentation of insurance policy provisions. RCW 48.44.110, RCW 48.44.120, WAC 284-30-350.

41.     The Washington Consumer Protection Act ("CPA") also generally prohibits unfair or deceptive conduct in trade or commerce. RCW 19.86.010. Persons injured in their business or property have a private right of action under the CPA. RCW 19.86.090.

**G.     Defendants' Coverage is Less than What is Marketed in its Plans**

42.     Defendants describe Ambetter as a Qualified Health Plan as defined in the ACA, which requires that the plan cover all of the ACA's mandatory benefits. Defendants specifically represent to prospective and existing customers that "Ambetter Health Plans are certified as Qualified Health Plan issuers in the Health Insurance Marketplace" and represent that the plan complies with the requirements

THIRD AMENDED COMPLAINT – CLASS ACTION - 16
CASE NO. 2:18-CV-00012-SMJ

of the ACA. https://www.ambetterhealth.com/about-us.html (last accessed 1/8/2018).

43.    Defendants market to prospective customers that "no matter which Ambetter plan you choose, you can always count on access to high quality, comprehensive care that delivers services, support and all of your Essential Health Benefits." Of the three Ambetter plans that are offered – Bronze, Silver and Gold – Defendants assure potential customers that "the only difference between these plans is how much premium you'll pay each month and how much you'll pay for certain medical services."

44.    Defendants state that Ambetter provides "Complete medical coverage that meets your medical needs and contains all of the Essential Health Benefits." Defendants provided details of these purported benefits and coverage in brochures made available to the public on their websites. Defendants assure the public in those materials that the promised coverage will be provided to customers.

45.    Defendants also describe their "Provider Network Design" in advertising Ambetter on the website they dedicate to the plan. Specifically, Defendants state in their marketing material:

> The Ambetter network includes healthcare providers to deliver all of the services that the Affordable Care Act describes as Essential Health Benefits. These include:
>
> Preventive care

THIRD AMENDED COMPLAINT – CLASS ACTION - 17
CASE NO. 2:18-CV-00012-SMJ

Hospitalization coverage

Emergency services

And more (refer to your Evidence of Coverage (EOC) for the full list of benefits)

To accomplish these goals, Ambetter contracts with a full range of practitioners and providers such as:

Primary care doctors

Behavioral health practitioners

Specialty physicians, such as cardiologists, neurologists, etc.

Providers, including hospitals, pharmacies, medical equipment companies, etc.

Ambetter makes sure practitioners and providers of all types are available within a certain geographic mileage or driving time from each of our members' homes to ensure you receive quality care in a timely manner.

Ambetter contracts with providers who accept our contract terms, meet our credentialing criteria, and agree to our reimbursement terms. We regularly review the provider network and make decisions about which providers remain in the network and if additional providers are needed, based on relevant factors that could include:

The availability of certain types of practitioners or hospitals in your area.

The ability of practitioners to meet our credentialing criteria, including a valid license to practice, applicable education and training, appropriate work history, etc.

Assessment of facilities such as hospitals, to ensure they are appropriately licensed and accredited.

Monitoring of the quality of care and service provided by individual practitioners and providers, which includes complaints from members and patient safety concerns.

1  https://www.ambetterhealth.com/find-a-provider/provider-network-

2  design.html (last accessed 1/8/2018).

3      46.    Defendants advertise that potential customers are able to use

4  Defendants' websites to see the providers they represent as being in their provider

5  network. Specifically, Defendants' websites offered, and continue to offer, a

6  feature allowing potential enrollees to search Defendants' networks of providers.

7  This feature is available to all potential Ambetter customers across the country. *See*

8  https://providersearch.ambetterhealth.com/ (last accessed 1/8/2018).

9      47.    Defendants appear to have copied contact information as to various

10  physicians from lists or medical directories and listed those providers as being part

11  of their network even though those providers were not actually part of the provider

12  network for Ambetter. In some areas, Defendants have simply copied into their

13  purported network an entire physician directory. In some cases, Defendants have

14  even listed the cellular telephone number of physicians who were not in the

15  Ambetter network. In fact, Defendants have listed medical students, nurses, and

16  other non-physicians in their list of in-network primary care providers.

17      48.    Defendants' provider network was and is so limited that holders of

18  Ambetter policies would have to travel long distances to see a medical provider, if

19  one legitimately within Defendants' network could be found at all.

20

49.    Defendants' online brochures and other materials available to prospective members further represent that members' grievances will be diligently documented by Defendants and promptly addressed.

50.    The Centers for Medicare and Medicaid Services ("CMS") conducted an audit of Centene's Medicare operations from May 16, 2016 through May 27, 2016. CMS auditors reported that (1) Centene failed to comply with Medicare requirements related to Part D formulary and benefit administration and coverage determinations, appeals, and grievances, and that (2) Centene's failures were systemic and adversely affected enrollees. According to CMS, the enrollees experienced delayed or denied access to covered benefits, increased out-of-pocket costs, and/or inadequate grievance or appeal rights.  CMS Report, January 12, 2017. https://www.cms.gov/Medicare/Compliance-and-Audits/Part-C-and-Part-D-Compliance-and-Audits/Downloads/Centene_Corporation_CMP_1-12-17.pdf  (last accessed 1/8/2018).

**H.    Defendants' Failure to Pay Claims, Resulting in Even Smaller Networks and Lack of Benefits and Coverage**

51.    Defendants routinely deny coverage for medical services, claiming that the provider did not show sufficient diagnostic evidence that the care was necessary. Centene and a subsidiary were sued in 2016 by a group of providers who alleged that Defendants wrongfully denied claims of their members that were within the scope of the members' Ambetter policies.

1    52.    As a result of this practice of denying legitimate claims, many

2    providers will not accept patients insured by Ambetter, making it even more

3    difficult for Ambetter members to find in-network providers.

4    **I.    Plaintiff's and Class Members' Experiences with Ambetter**

5    53.    Plaintiff Harvey viewed the information supplied by Centene and

6    Coordinated Care through www.wahealthfinder.org in the last two months of 2016.

7    Among the information she reviewed were (1) the Summary of Benefits and

8    Coverage under the heading Ambetter from Coordinated Care Corporation:

9    Ambetter Balanced Care 10 (2017) + Vision ("Plan Summary"), (2) the

10   "Ambetter" Balanced Care 10 (2017) Plan Brochure ("Plan Brochure"); and (3) the

11   "Ambetter" Preventive Services Guide, effective January 1, 2017, which identifies

12   Centene Corporation on the cover as the copyright holder. After reviewing this

13   information, Ms. Harvey bought Centene's Ambetter Health Insurance Policy,

14   Silver Metal type, from its Washington subsidiary Coordinated Care on the

15   Washington Benefit Health Exchange in December 2016.

16   54.    The Plan Brochure represents that Ambetter "provides quality

17   healthcare solutions" with coverage options that make it "easier to take charge of

18   your health." It further states that, "By choosing Ambetter from Coordinated Care,

19   you'll receive affordable, quality healthcare coverage. . . ."  The Plan Brochure

20   also represents that the "Providers listed in the Ambetter from Coordinated Care

THIRD AMENDED COMPLAINT – CLASS ACTION - 21
CASE NO. 2:18-CV-00012-SMJ

1    online directory are in-network." The Plan Brochure and Plan Summary also

2    purport to describe generally what services are covered and what are not, but are

3    misleading by failing to indicate how few in-network providers would be available.

4    For example, they indicate that emergency room services would be covered,

5    although out-of-network charges might be incurred for out-of-network providers

6    working in an otherwise covered emergency room. They fail to disclose, however,

7    that in the Spokane area, during 2017, they had zero emergency room physicians

8    who were in-network. Because Defendants failed to disclose that the limitations of

9    the network coverage actually provided by the Ambetter policy fell far short of

10   what they represented, Plaintiff Harvey was forced to incur a charge of $1,544 for

11   treatment received from an emergency room doctor.

12        55.    Centene and Coordinated Care also failed to cover individual

13   elements of Ms. Harvey's medical visits because they were not in-network. For

14   example, Plaintiff Harvey received services from a covered doctor on March 17,

15   2017, but then received a bill from the lab used by that doctor. Similarly, Plaintiff

16   Harvey, who has been identified as high risk for colorectal cancer, was advised by

17   Coordinated Care to get a colonoscopy. Colonoscopies are within the preventive

18   services required by the ACA to be included in coverage and are identified as

19   covered in Centene's Preventive Care brochure. When she got the colonoscopy

20

THIRD AMENDED COMPLAINT – CLASS ACTION - 22
CASE NO. 2:18-CV-00012-SMJ

1    from a covered doctor, however, her claims for two of the technicians involved in

2    the procedure were denied.

3       56.  Plaintiff Harvey appealed each of the many denials of her claims, and

4    included the Washington State Office of Insurance Commissioner, Consumer

5    Advocacy, in her submissions. In many cases, her appeal was ultimately

6    successful, indicating that the initial denial of her claims was invalid. However, she

7    was forced to complete the process of appeal, while providers were sending her

8    bills and deeming her a credit risk. Coordinated Care also made it difficult to

9    contact the company or obtain information, such as the status of appeals regarding

10    invalid denials. Typically, Coordinated Care would respond to her messages by

11    asking her to call, which she did, only to find it would take hours to get through the

12    phone system to find someone who could help her try to find providers (which

13    were generally not available) or to accept an appeal of a wrongly denied claim. At

14    the end of 2017, Plaintiff Harvey's policy automatically renewed for 2018 without

15    any action on her part, and she had paid and continues to pay monthly premiums

16    on this policy.

17       57.  Other members of the Class have had similar experiences, as admitted

18    by Defendants in their May 17, 2018 letter to policyholders discussed above.  One

19    Superior Health/Ambetter member attempted to schedule an appointment with

20    someone listed as a primary care physician on the provider network, only to find

THIRD AMENDED COMPLAINT – CLASS ACTION - 23
CASE NO. 2:18-CV-00012-SMJ

out that the person was a nurse practitioner. Another person listed as a physician provider was a medical student at University of North Texas Medical School. Defendants may have copied a roster of medical students and posted it on their website on their provider network page. According to a number of physicians the member spoke to, providers refuse to accept Ambetter because Superior Health routinely refuses to pay legitimate claims, often citing insufficient diagnostics as the reason for the refusal even when all relevant diagnostic information had been obtained and indicated the reasonableness of the treatment provided.

58.    Another Ambetter enrollee is a 60-year-old widow with medical issues. The federal government pays a monthly subsidy of $662 for her Ambetter insurance. Despite this substantial government subsidy, she has consistently encountered difficulties with finding a medical provider willing to accept the Ambetter plan. She has to drive extraordinary distances to find a provider within Ambetter's network, an ordeal which can be insurmountable given her medical condition.

**J.    CLASS ACTION ALLEGATIONS**

59.    Plaintiff brings this lawsuit as a class action on behalf of herself and all others similarly situated pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) and LR 23(i) on behalf of the following class: All persons in the state of Washington who were insured by Defendants' Ambetter insurance product which was

THIRD AMENDED COMPLAINT – CLASS ACTION - 24
CASE NO. 2:18-CV-00012-SMJ

1  purchased through an ACA HIE from January 11, 2012 to the present (the

2  "Class"). Excluded from the Class are Defendants, Defendants' employees,

3  Defendants' subsidiaries, the Judge(s) to which this case is assigned and the

4  immediate family of the Judge(s) to which this case is assigned.

5      60.    This Class Definition may be amended or modified as warranted by

6  discovery or other activities in the case hereafter.

7      61.    Numerosity: The Class encompasses thousands of individuals, which

8  is so numerous that joinder of all members is impracticable. The Class is

9  ascertainable from Defendants' records.

10      62.    Typicality: Plaintiff's claims are typical of the claims of the Class,

11  because Plaintiff and the members of the Class each purchased an Ambetter policy

12  and were similarly damaged thereby. The members of the Class have also been

13  damaged as a result of Defendants' erroneous billing practices.  Plaintiff and the

14  other members of the Class also share the same interest in preventing Defendants

15  from engaging in such activity in the future.

16      63.    Adequacy: Plaintiff will fairly and adequately protect the interests of

17  the Class. Plaintiff's interests are coincident with, and not antagonistic to, those of

18  the other members of the Class. Plaintiff has retained counsel competent and

19  experienced in class and consumer litigation and have no conflict of interest with

20  other members of the Class in the maintenance of this class action. Plaintiff has no

relationship with Defendants except as a policyholder who entered into contracts with Defendants.  Plaintiff will vigorously pursue the claims of the Class.

64.    Existence and Predominance of Common Questions of Fact and Law: This case presents many common questions of law and fact that will predominate over any questions affecting members of the Class only as individuals. The damages sustained by Plaintiff and the Class's members flow from the common nucleus of operative facts surrounding Defendants' misconduct. The common questions include, but are not limited to, the following:

      a.    Whether Defendants' failure to provide the coverage required by the ACA violated Washington law as set forth herein;

      b.    Whether Defendants breached their contracts with Plaintiff and the Class by failing to provide the coverage promised and mandated the contracts through the conduct alleged herein;

      c.    Whether Defendants' misrepresentation of their insurance plans' coverage was an unfair and deceptive business practice;

      d.    Whether Defendants or their agents pursued uniform policies and procedures in their Ambetter policy sales, customer service, and/or claims processing;

      e.    Whether Defendants failed to comply with the terms of the Ambetter health insurance policies;

THIRD AMENDED COMPLAINT – CLASS ACTION - 26
CASE NO. 2:18-CV-00012-SMJ

1        f.     Whether Centene and Coordinated Care operated the latter as a

2              shell or alter ego such that the law should disregard its separate

3              corporate identities; and

4        g.     Whether Plaintiff and the Class's members are entitled to

5              monetary damages or injunctive relief and/or other remedies

6              and, if so, the nature of any such relief.

7        65.    Superiority: A class action is superior to other available methods for

8 the fair and efficient adjudication of this controversy because joinder of all

9 members is impracticable. Furthermore, because the damages suffered by

10 individual class members may be relatively small, the expense and burden of

11 individual litigation makes it impracticable for the members of the Class to

12 individually seek redress for the wrongs done to them. Plaintiff believes that

13 members of the Class, to the extent they are aware of their rights against

14 Defendants, would be unable to secure counsel to litigate their claims on an

15 individual basis because of the relatively limited nature of the individual damages,

16 and that a class action is the only feasible means of recovery for these individuals.

17 Even if members of the Class could afford such individual litigation, the court

18 system could not. Individual litigation would pose a high likelihood of inconsistent

19 and contradictory judgments. Further, individualized litigation would increase the

20 delay and expense to all parties and to the court system, due to the complex legal

THIRD AMENDED COMPLAINT – CLASS ACTION - 27
CASE NO. 2:18-CV-00012-SMJ

1  and factual issues presented by this dispute. By contrast, the class action procedure

2  presents far fewer management difficulties, and provides the benefits of single

3  adjudication, economies of scale, and comprehensive supervision by a single court.

4  This action presents no difficulties in management that would preclude its

5  maintenance as a class action.

6       66.    In the alternative, the Class may be certified because:

7          a.    the prosecution of separate actions by the individual members

8               of the Class would create a risk of inconsistent or varying

9               adjudication with respect to individual members of the Class

10               that would establish incompatible standards of conduct for

11               Defendants;

12          b.    the prosecution of separate actions by individual members of

13               the Class would create a risk of adjudications with respect to

14               them which would, as a practical matter, be dispositive of the

15               interests of the other members of the Class not parties to the

16               adjudications, or substantially impair or impede the ability to

17               protect their interests; and

18          c.    Defendants have acted or refused to act on grounds generally

19               applicable to the Class, thereby making appropriate final and

20               injunctive relief with respect to the Class. In addition, Plaintiff

1    has alleged, and intend to show, that any corporate formalities

2    between the Defendants should be disregarded.

3    **COUNT I**
**Breach of Contract**
4    **(Against Defendant Coordinated Care)**

5    67.    Plaintiff repeats and realleges the allegations set forth above, as if

6    fully set forth here verbatim.

7    68.    Plaintiff and the members of the Class entered into valid and binding

8    written contracts with Coordinated Care for the purchase of Ambetter insurance

9    policies.

10    69.    Defendants' policies state that, under the policy, Plaintiff and

11    members of the Class have the "right to:" (a) "A current list of Network

12    Providers," (b) "Adequate access to qualified Physicians and Medical Practitioners

13    and treatment or services regardless of . . . geographic location, health condition,

14    national origin or religion," and (c) "Access Medically Necessary urgent and

15    Emergency Services 24 hours a day and seven days a week."

16    70.    Defendants' policies further state that, "We and the Member shall

17    comply with all applicable state and federal laws and regulations in performance of

18    this Contract."

19    71.    For the reasons alleged above, Coordinated Care breached each of

20    these provisions of the policies issued to Plaintiff and the members of the Class.

72.    Plaintiff and the members of the Class have performed all conditions precedent to the application of the policies.

73.    Plaintiff and members of the Class suffered damages as a direct and proximate result of Coordinated Care's breach of contract.

74.    Every contract contains an implied covenant of good faith and fair dealing.

75.    Defendants' conduct, including failing to provide accurate information regarding their provider networks, failing to provide a sufficient network of providers, denying valid claims, failing to pay providers for valid claims, and collecting premiums while failing to provide an adequate network of providers that included emergency room physicians, labs used by in network providers and the like, destroyed the rights of Plaintiff and members of the Class to receive the benefits of their contracts with Coordinated Care.

76.    As a result of the foregoing, Plaintiff and the members of the Class are entitled to:

    a.   an order requiring Coordinated Care to perform their contracts as they agreed to do; and

    b.   benefit-of-the-bargain compensatory damages to Plaintiff and the members of the Class in a sum equivalent to performance of the contract that places Plaintiff and Class members in the positions they

1    would occupy if the contracts had been fulfilled rather than breached.

2                              **COUNT II**
      **Unfair Business Practices under RCW §§ 19.86.010, *et seq*.**
3                      **(Against All Defendants)**

4        77.    Plaintiff repeats and realleges the allegations set forth above, as if

5    fully set forth here verbatim.

6        78.    Plaintiff and the Class members are "persons" within the meaning of

7    the Washington Consumer Protection Act, RCW § 19.86.010(1).

8        79.    Defendants are "persons" within the meaning of the Washington

9    Consumer Protection Act, RCW 19.86.010(1), and conduct "trade" and

10   "commerce" within the meaning of the Washington Consumer Protection Act,

11   RCW 19.86.010(2).

12       80.    Defendants engaged in unfair acts or practices in the conduct of their

13   business by failing to have sufficient providers within the Ambetter network as

14   represented, by failing to pay legitimate medical claims on behalf of their insured,

15   by failing to provide the benefits and coverage represented by Defendants to be

16   within the plan, by failing to address Plaintiff's and other Class members'

17   complaints, by violating Washington state laws and regulations governing the

18   conduct and operations of health insurers, by violating the ACA, and by omitting

19   material facts regarding the benefits and coverage of Ambetter policies.

20

81.     Defendants further engaged in unfair acts or practices in the conduct of their business when they continued to engage in unfair practices, despite numerous complaints from Class members and at least findings by both the Washington State and the federal government that their systematic practices failed to meet acceptable standards and harmed enrollees.

82.     The acts and practices described above are unfair because these acts or practices (1) have caused substantial financial injury to Plaintiff and Class members; (2) are not outweighed by any countervailing benefits to consumers or competitors; and (3) are not reasonably avoidable by consumers. The acts and practices are further unfair because they offend public policy as it has been established by the ACA and by Washington statutes and regulations, including RCW 48.44.110 and 48.44.120 and WAC 284-170-200 and 284-170-260.

83.     Defendants' unfair practices have occurred in their trade or business and were and are capable of injuring a substantial portion of the public.  As such, Defendants' general course of conduct as alleged herein is injurious to the public interest, and the acts complained of herein are ongoing and/or have a substantial likelihood of being repeated.

84.     As a direct and proximate result of Defendants' unfair acts or practices, Plaintiff and Class members suffered injury in fact by paying insurance premiums but failing to receive benefits, paying out-of-pocket costs for services

1   covered but not provided by the Ambetter plan, and spending time and money

2   locating and traveling to providers willing to accept the Ambetter plan.

3       85.    Plaintiff and Class members are therefore entitled to:

4       a.  an order enjoining the conduct complained herein;

5       b.  actual damages to Plaintiff and the members of the Class equal to:

6       i.  Benefit of the Bargain: a refund of the entire premium for the

7       purchase of insurance that was not as represented and

8       contracted for in order to restore Plaintiff and the Class to their

9       position prior to purchasing the Ambetter policy; and/or

10       ii.  Partial Refund: the difference in value between the value of the

11       policy as represented and contracted for and the value of the

12       policy as actually accepted and delivered; and/or

13       iii.  Out-Of-Pocket Expenses: damages incurred as a result of

14       having to pay for services that should have been covered by the

15       Ambetter policy.

16       c.  treble damages pursuant to RCW § 19.86.090;

17       d.  costs of suit, including reasonable attorney's fees; and

18       e.  such other further damages and relief as the Court may deem proper.

19       86.    Plaintiff and the Class members are also entitled to additional

20   equitable relief as the Court deems appropriate, including, but not limited to,

THIRD AMENDED COMPLAINT – CLASS ACTION - 33
CASE NO. 2:18-CV-00012-SMJ

1    disgorgement, for the benefit of the Class members, of all or part of the ill-gotten

2    profits Defendants received in connection with the policies.

3                                **IV. PRAYER FOR RELIEF**

4        **WHEREFORE** Plaintiff, individually and on behalf of the members of the

5    Class, prays for relief as follows:

6        A.      An order certifying this action to proceed as a class action, and

7    appointing Plaintiff and her counsel to represent the Class;

8        B.      An order awarding damages to Plaintiff and the members of the Class,

9    including, where appropriate, treble damages, exemplary damages, and all other

10   monetary relief to which Plaintiff and the Class's members are entitled;

11       C.      For an order awarding restitutionary disgorgement to Plaintiff and the

12   Class;

13       D.      For an order awarding non-restitutionary disgorgement to Plaintiff and

14   the Class;

15       E.      For a declaration that Defendants have violated applicable state law

16   and an order requiring Defendants to immediately cease and desist their unlawful,

17   deceptive, and obstructive practices with respect to the marketing, administration,

18   and claims processing in connection with the Ambetter health insurance plan;

19       F.      For an order awarding attorneys' fees and costs; and

20       G.      For such other and further relief as may be just and equitable.

THIRD AMENDED COMPLAINT – CLASS ACTION - 34
CASE NO. 2:18-CV-00012-SMJ

# JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED AND DATED this 28th day of November, 2018.

TERRELL MARSHALL LAW GROUP PLLC

By: _/s/ Beth E. Terrell, WSBA #26759_
    Beth E. Terrell, WSBA #26759
    Jennifer R. Murray, WSBA #36983
    Elizabeth A. Adams, WSBA #49175
    Attorneys for Plaintiff and the Class
    936 North 34th Street, Suite 300
    Seattle, Washington 98103
    Telephone: (206) 816-6603
    Facsimile: (206) 319-5450
    Email: bterrell@terrellmarshall.com
    Email: jmurray@terrellmarshall.com
    Email: eadams@terrellmarshall.com

    Seth Lesser, *Admitted Pro Hac Vice*
    Attorneys for Plaintiff and the Class
    KLAFTER OLSEN & LESSER LLP
    Two International Drive, Suite 350
    Rye Brook, New York 10514
    Telephone: (914) 934-9200
    Email: seth@klafterolsen.com

    Kurt B. Olsen
    Attorneys for Plaintiff and the Class
    KLAFTER OLSEN & LESSER LLP
    1250 Connecticut Avenue, N.W., Suite 200
    Washington, D.C. 20036
    Telephone: (202) 261-3553
    Email: ko@klafterolsen.com

1

2
Robert S. Green
James Robert Noblin
Attorneys for Plaintiff and the Class
3
GREEN & NOBLIN, P.C.
2200 Larkspur Landing Circle, Suite 101
4
Larkspur, California 94939
Telephone: (415) 477-6700
5
Email: gnecf@classcounsel.com
Email: jrn@classcounsel.com
6

7
David Martin
Mark Ravis
Attorneys for Plaintiff and the Class
8
MARK RAVIS & ASSOCIATES
1875 Century Park East, Suite 700
9
Los Angeles, California 90067
Telephone: (310) 295-4145
10
Email: dhmartin99@gmail.com
Email: mravis99@gmail.com
11

12

13

14

15

16

17

18

19

20

CERTIFICATE OF SERVICE

I, Beth E. Terrell, hereby certify that on November 28, 2018, I electronically

filed the foregoing with the Clerk of the Court using the CM/ECF system which

will send notification of such filing to the following:

Maren Roxanne Norton, WSBA #35435
Attorneys for Defendants
STOEL RIVES LLP
600 University Street, Suite 600
Seattle, Washington 98101
Telephone: (206) 386-7598
Facsimile: (206) 386-7500
Email:  mrnorton@stoel.com

Steven M. Cady, *Admitted Pro Hac Vice*
Brendan V. Sullivan, Jr., *Admitted Pro Hac Vice*
Andrew McBride
William Murray
Attorneys for Defendants
WILLIAMS & CONNOLLY, PLLC
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 434-5321
Facsimile: (202) 434-5029
Email: scady@wc.com
Email: bsullivan@wc.com
Email: amcbride@wc.com
Email: bmurray@wc.com

THIRD AMENDED COMPLAINT – CLASS ACTION - 37
CASE NO. 2:18-CV-00012-SMJ

1    DATED this 28th day of November, 2018.

2                              TERRELL MARSHALL LAW GROUP PLLC

3
                             By:    /s/ Beth E. Terrell, WSBA #26759
4                                  Beth E. Terrell, WSBA #26759
                                   Attorneys for Plaintiff and the Class
5                                  936 North 34th Street, Suite 300
                                   Seattle, Washington 98103
6                                  Telephone: (206) 816-6603
                                   Facsimile: (206) 319-5450
7                                  Email: bterrell@terrellmarshall.com

8

9

10

11

12

13

14

15

16

17

18

19

20

THIRD AMENDED COMPLAINT – CLASS ACTION - 38
CASE NO. 2:18-CV-00012-SMJ