Beth E. Terrell, WSBA #26759
Jennifer R. Murray, WSBA #36983
Elizabeth A. Adams, WSBA #49175
Attorneys for Plaintiff and the Class
TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603
Facsimile: (206) 319-5450
Email: bterrell@terrellmarshall.com
Email: jmurray@terrellmarshall.com
Email: eadams@terrellmarshall.com

[Additional Counsel Appear On Signature Page]

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CYNTHIA HARVEY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CENTENE MANAGEMENT COMPANY, LLC and COORDINATED CARE CORPORATION,<br><br>Defendants. | NO. 2:18-cv-00012-SMJ<br><br>**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |

REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION
CASE NO. 2:18-CV-00012-SMJ

# TABLE OF CONTENTS

Page No.

I. INTRODUCTION ................................................................................................ 1

II. REPLY .................................................................................................................. 2

    A. A class action is the superior method to adjudicate the claims here ........................................................................................................ 2

    B. Common issues predominate .................................................................. 5

# TABLE OF AUTHORITIES

Page No.

## FEDERAL CASES

*Andrews v. Plains All American Pipeline, L.P.*,
    777 Fed. Appx. 889 (9th Cir. 2019) ............................................................. 8, 9

*Astiana v. Kashi Co.*,
    291 F.R.D. 493 (S.D. Cal. 2013) ..................................................................... 3

*Blough v. Shea Homes, Inc.*,
    No. 2:12-cv-01493 RSM, 2014 WL 3694231 (W.D. Wash.
    July 23, 2014) ................................................................................................. 8

*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir. 2017) .................................................................. 1, 10

*Chin v. Chrysler Corp.*,
    C182 F.R.D. 332 (D.N.J. 1998) ...................................................................... 4

*Cohen v. Trump*,
    303 F.R.D. 376 (S.D. Cal. 2014) ..................................................................... 8

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) .......................................................................................... 9

*In re Hotel Tel. Charges*,
    500 F.2d 86 (9th Cir. 1974) ............................................................................ 4

*In re Morning Song Bird Food Litig.*,
    320 F.R.D. 540 (S.D. Cal. 2017) ..................................................................... 8

*Kamm v. Cal. City Dev. Co.*,
    509 F.2d 205 (9th Cir. 1975) .......................................................................... 3

*Murray v. DirectTV, Inc*,
    2014 WL 12597904 (C.D. Cal. Apr. 23, 2014) ............................................... 4

*Nguyen v. Nissan North Am., Inc.*,
    932 F.3d 811, 818 (9th Cir. 2019) ....................................................... 3, 9, 10

*Pattillo v. Schlesinger*,
    625 F.2d 262 (9th Cir. 1980) ...................................................................... 4

*PPA, Prods. Liab. Litig.*,
    214 F.R.D. 614 (W.D. Wash. 2003) ............................................................ 4

*Pulaski & Middleman, LLC v. Google, Inc.*,
    802 F.3d 979 (9th Cir. 2015) .................................................................... 10

*Rowden v. Pac. Parking Sys.*,
    282 F.R.D 581 (C.D. Cal. 2012) .................................................................. 4

*Torres v. Mercer Canyons Inc.*,
    835 F.3d 1125 (9th Cir. 2016) ................................................................. 7, 9

*True Health Chiropractic, Inc. v. McKesson*,
    896 F.3d 923 (9th Cir. 2018) ...................................................................... 7

*Webb v. Carter's Inc.*,
    272 F.R.D. 489 (C.D. Cal. 2011) ................................................................. 3

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
    594 F.3d 1087 (9th Cir. 2010) .................................................................... 9

### STATE CASES

*Deegan v. Windermere Real Estate/Ctr.-Isle, Inc.*,
    197 Wn. App. 875, 391 P.3d 582 (2017) ..................................................... 8

## I. INTRODUCTION

Centene does not deny that it has, and has had, an inadequate provider network for Ambetter policies in Washington. While quibbling around the margins, it does not controvert Plaintiff's primary allegations: Centene fails to maintain an adequate provider network; fails to disclose network inadequacies to insureds; fails to notify insureds of their basic consumer rights; and permits improper billing.

Centene maintains a class action is not superior because an Ambetter member may contact Centene or Washington's OIC to complain. But Centene ignores the record, which shows that when customers complain to either Centene or the OIC, they get the runaround and many are never reimbursed at all. Centene's formal "remediation" program is similarly deficient; it compensated only a fraction of those entitled to reimbursements. Perhaps most importantly, there is *no evidence* that Centene has refunded members the benefit of the bargain damages to which they would be entitled in a class action. As for the remaining Rule 23 elements, Centene does not dispute that the class is sufficiently numerous, that common issues exist, and that Plaintiff Harvey is typical and adequate. And the few purportedly "individualized issues" Centene identifies either are red herrings, can be manageably addressed through analyzing Centene's own data, or can be adjudicated during a post-liability claims process. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1131 (9th Cir. 2017). For these reasons, class certification should be granted.

## II. REPLY

**A.  A class action is the superior method to adjudicate the claims here.**

Centene's primary argument in opposition to certification is that because class members may avail themselves of other mechanisms to obtain reimbursement of out-of-network medical costs — such as complaining to Centene or the OIC or utilizing an OIC-ordered "remediation" program — a class action is not superior. But Centene's records show that such mechanisms have not been effective. Supp. Schexnaydre Decl. ¶ 2-15 (identifying from Centene's records 236 people who complained to Centene about surprise or balance bills who never were compensated); Ex. 37 (showing Centene has not taken steps to identify members who experienced improper balance billing in 2015 and 2016); Ex. 42 (showing only a fraction of Ambetter members received any compensation under the OIC-ordered remediation plan). And Centene continues to refuse to take affirmative steps to systematically identify members who have been improperly billed despite having the technology to do so. Ex. 30 at 110:23-111:12, 113:3-115:5, 116:18-117:8; Ex. 43; Ex. 44. Plaintiff Cynthia Harvey is a good example of why a class action is superior: OIC forwarded Harvey's complaints to Centene, but Centene addressed many of them only after Harvey filed a class action. *See* Exs. 58-60; Supp. Schexnaydre Decl. ¶¶ 16-19.

Plaintiff's claims are not limited to out-of-network reimbursement costs. Plaintiff *also* seeks full or partial benefit-of-the-bargain damages, injunctive relief, and

REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION - 2
CASE NO. 2:18-CV-00012-SMJ

1  treble damages under the CPA for all Ambetter policy holders, *none* of which would
2  be provided or remedied by the mechanisms that Centene argues defeats
3  superiority. Indeed, two years (2015 and 2016) of policyholders who were injured
4  and, to date, ignored, would obtain no recompense. A jury could find that Centene
5  sold the same policies to the entire class, using the same misleading practices, and
6  that its systematic insufficiencies diminished the value of the insurance for all class
7  members. *See, e.g., Astiana v. Kashi Co.*, 291 F.R.D. 493, 506 (S.D. Cal. 2013)
8  (approving class certification of such a theory for benefit of the bargain damages)
9  (cited with approval in *Nguyen v. Nissan North America, Inc.*, 932 F.3d 811, 818
10 (9th Cir. 2019) (affirming class certification for benefit of the bargain claims under
11 consumer protection laws)).

12     An ad hoc self-identification procedure would not be a superior alternative. It
13 would not provide a legal determination of liability; it would fail to provide treble
14 damages; and it would not provide any injunctive relief to prevent reoccurrence of
15 Centene's errors. Centene's cases do not counsel otherwise. In *Kamm v. Cal. City*
16 *Dev. Co.*, 509 F.2d 205 (9th Cir. 1975), an earlier court proceeding had imposed a
17 continuing injunction that provided relief to all class members, something materially
18 lacking here (nor is there any indication in that case that alternative claims existed for
19 the class not covered by the state court lawsuit -- such as benefit of the bargain
20 damages, treble damages, or attorneys' fees). In *Webb v. Carter's Inc.*, 272 F.R.D.

REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION - 3
CASE NO. 2:18-CV-00012-SMJ

1  489 (C.D. Cal. 2011), the alternative private replacement and refund remedy
2  automatically covered *everyone,* without requiring them to do anything, and the
3  same was true in *Chin v. Chrysler Corp.*, 182 F.R.D. 332 (D.N.J. 1998), where
4  defendant had provided tangible relief to all class members through a lifetime
5  warranty extension relating to the defective car part that actually increased the value
6  of the car. *See also Pattillo v. Schlesinger,* 625 F.2d 262, 265 (9th Cir. 1980)
7  (alternative process provided relief to *all* class members).
8      Other of Centene's cases involved the existence of parallel lawsuits that either
9  encompassed the whole class or showed the lack of need for a class, such as an
10 MDL with hundreds of cases, *In re Hotel Tel. Charges,* 500 F.2d 86 (9th Cir. 1974),
11 a mass tort that had received a substantial publicity, *PPA, Prods. Liab. Litig.*, 214
12 F.R.D. 614, 620-21 (W.D. Wash. 2003), or a claim subject to a court judgment for
13 enforceability, *Murray v. DirectTV, Inc,* 2014 WL 12597904 (C.D. Cal. Apr. 23,
14 2014). Finally, *Rowden v. Pac. Parking Sys.*, 282 F.R.D 581, 58 (C.D. Cal. 2012),
15 was a decision driven by manageability issues where 100,000 class members would
16 have had to testify just to prove they were members of the class.
17     Continuing the status quo would be tantamount to pardoning Centene from

REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION - 4
CASE NO. 2:18-CV-00012-SMJ

responsibility for its wrongful acts.[1] Were Centene's position accepted, any defendant with a customer service department could defeat superiority by arguing that it should be allowed to handle complaints in house. This cannot be the law. A class action provides a mechanism to adjudicate the rights of all Ambetter members under the oversight of the Court. Class treatment is not only superior, but is the *only* practicable means through which the class-wide common issues can be addressed.

B.   Common issues predominate.

The parties agree that predominance is satisfied when "the common, aggregation-enabling issues in the case are more prevalent or important than the non-common, aggregation defeating, individualized issues." Pl's Mtn at 23; Def's Opp at 19. Centene does not dispute that common issues — including whether Centene maintained an adequate provider network; whether Centene failed to disclose to consumers its actual provider roster on its website; and whether Centene failed to adequately disclose that members were not responsible for out-of-network costs. *See* Plf's Mtn at 25. Instead, Centene argues the merits, asserting that its inadequate networks are "permitted." Def. Opp at 3. OIC, of course, disagreed. Pl's Mtn at 9-

---

[1] Centene also contends that a class would cause a diminution in recovery because of attorneys' fees, but the claims here are brought under the Washington CPA, which has an attorneys' fees provision.

REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION - 5
CASE NO. 2:18-CV-00012-SMJ

10. Centene also argues that its policy "states that Coordinated Care will cover costs incurred by members who see out-of-network providers because no in-network provider is available." Def Opp. at 4. But the policy does not say that, instead emphasizing that costs will *not* be covered unless they are for emergency services or obtained with prior authorization. Wendt Decl., Ex. 1 (ECF No. 106-1) at 59.[2] Centene also maintains that it covers treatment for kidney dialysis. Def. Opp. at 7. But its own records disclose that 46 of members have been charged out-of-network rates for this essential care. . Supp. Schexnaydre Decl. ¶ 44 The jury will decide, in one fell swoop for the class, if the conduct violates the CPA or breaches contracts.

Although couched in various guises of injury, causation, and damages, Centene's position is simply that whether and why a person used an out-of-network provider is an individualized determination. *First*, as to the benefit of the bargain claims, they exist despite any individual's circumstances. All class members paid premiums for health care insurance that did not comply with Washington law and valuation is an objective matter.

*Second*, regarding injury, all class members suffered the same injury because they were subject to Centene's unlawful conduct — failing to maintain an adequate

---

[2] Centene fails to address the allegation that its website fails to disclose its actual provider network.

REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION - 6
CASE NO. 2:18-CV-00012-SMJ

provider network, hiding the inadequacies from members, and failing to disclose the right to compensation that accrued because of these inadequacies. These injuries map precisely onto Plaintiff's class definition, which includes all Washington Ambetter policy holders. *See Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1138-39 (9th Cir. 2016) (certifying class over objection the class definition was too broad).

*Third*, Centene asserts that individualized issues prevent identification of class members who were improperly billed. This statement is belied by the fact that it developed a software tool to "prevent inappropriate payment or denial" of benefits for certain services. Ex. 44. And Centene does not dispute that it could have used that tool to systematically identify members likely to receive improper bills. Ex. 30 at 110:23-111:12, 113:3-115, 116:18-117:8. In fact, Plaintiff's counsel have analyzed Centene's records to do just that. Supp. Schexnaydre Decl. ¶¶ 20-32.

*Fourth*, Centene speculates that some members may have chosen to seek out-of-network care. But not a shred of evidence supports this and a defendant's "speculation and surmise" cannot defeat class certification. *See True Health Chiropractic, Inc. v. McKesson*, 896 F.3d 923, 931 (9th Cir. 2018). The evidence is overwhelming that Centene received complaints about the lack of participating providers; that its "find a provider" website was (and is) inaccurate; that its network was (and is) insufficient; and that its frustrated members were improperly denied coverage or received surprise and balance billings that were not always reimbursed.

REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION - 7
CASE NO. 2:18-CV-00012-SMJ

*See* Pl. Mtn. at 9-15; *see also* Amended Schexnaydre Decl. ¶¶ 53-57.

*Fifth,* individualized reliance issues do not predominate. Class members need not prove that they read and relied upon Centene's representations because their CPA claim is based on nondisclosure. *Deegan v. Windermere Real Estate/Ctr.-Isle, Inc.,* 197 Wn. App. 875, 886, 890, 391 P.3d 582 (2017). The Third Amended Complaint sufficiently alleges that Centene violates the CPA by, among other things, "omitting material facts regarding the benefits and coverage of Ambetter policies." ECF No. 62 ¶¶ 11, 80.

Unlike *Blough v. Shea Homes, Inc.,* No. 2:12-cv-01493 RSM, 2014 WL 3694231, at *13 (W.D. Wash. July 23, 2014), this case is not a "mirror image" omissions case because the omissions were material. Thus, reliance is not a bar to certification. *See In re Morning Song Bird Food Litig.,* 320 F.R.D. 540, 555 (S.D. Cal. 2017) ("a common sense inference can be made that the class members relied upon [d]efendants' misrepresentation"); *Cohen v. Trump,* 303 F.R.D. 376, 385 (S.D. Cal. 2014) (same).

Centene's heavy reliance on *Andrews v. Plains All American Pipeline, L.P.,* 777 Fed. Appx. 889, 892 (9th Cir. 2019) is misplaced. *Andrews* involved class claims for varied economic injuries resulting from an oil pipeline shutdown, from people who worked on the pipeline to those who provided incidental, subcontracted services. Not surprisingly, individualized injury issues predominated because the

REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION - 8
Case No. 2:18-cv-00012-SMJ

1  court determinations were needed as to whether any class member was even
2  "impacted" by the shutdown. *Id.* at 892. By contrast, every class member has been
3  subjected to Centene's unfair conduct: the same provider network was offered to
4  every class member; class members had to search the same website for in-network
5  providers; and class members were provided the same deceptive marketing materials
6  and contracts. This case is more like *Torres*, where the Ninth Circuit held, in a CPA
7  case, that some potentially uninjured class members did not defeat predominance
8  because the record did not show "large numbers of class members who were never
9  exposed to the challenged conduct to begin with." *Torres*, 835 F.3d at 1136.

10     *Sixth*, Centene contends that individualized damages determinations preclude
11  certification unless the plaintiff provides a classwide methodology. Not so. In this
12  Circuit individualized damages determinations do not defeat certification,
13  particularly in a case like this one where all class members have been subject to the
14  same injurious conduct and common legal and factual issues otherwise predominate.
15  *See Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1089 (9th Cir. 2010)
16  ("The potential existence of individualized damages assessments ... does not detract
17  from the action's suitability for class certification."). That holding was not altered by
18  *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). All *Comcast* requires is that class
19  members' damages be, as they are here, "traceable to the same injurious course of
20  conduct underlying the plaintiffs' legal theory." *Nguyen*, 932 F.3d at 817. And

REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION - 9
CASE NO. 2:18-CV-00012-SMJ

*Comcast* "did **not** hold that proponents of class certification must rely upon a classwide damages model to demonstrate predominance." *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988 (9th Cir. 2015). A classwide methodology for determining damages is required only when there is "[u]ncertainty regarding class members' damages." *Nguyen*, 932 F.3d at 817. Centene asserts that it routinely resolves its members' requests for reimbursement of out-of-network costs. Class members' damages may be individualized but they are not uncertain.

*Finally,* Plaintiff *has shown* that damages can be established on a classwide basis. Any benefit of the bargain damages are non-individualized and objective; and Centene's records show at least 5,673 class members received surprise bills for which they were not reimbursed while at least 14,037 class members likely were balance billed. Supp. Schexnaydre Decl. ¶ 8. But, ultimately, even were there any individualized issues whatever, as was reaffirmed in *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1131 (9th Cir. 2017), if a jury finds that Centene violated the CPA or breached its contract with members, the Court can use various tools to supervise and manage claims to effectuate the superior ends of a class, including, if need, be subpoening third parties. *See id.* (claims administrators, auditing processes, sampling, and follow-up notices tools that could be utilized). That is a far preferable process, as noted, than giving Centene a pardon for what it did and its incomplete and ineffectual processes to date.

REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION - 10
CASE NO. 2:18-CV-00012-SMJ

RESPECTFULLY SUBMITTED AND DATED this 13th day of March, 2020.

TERRELL MARSHALL LAW GROUP PLLC

By: /s/ Beth E. Terrell, WSBA #26759
Beth E. Terrell, WSBA #26759
Jennifer R. Murray, WSBA #36983
Elizabeth A. Adams, WSBA #49175
Attorneys for Plaintiff and the Class
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603
Facsimile: (206) 319-5450
Email: bterrell@terrellmarshall.com
Email: jmurray@terrellmarshall.com
Email: eadams@terrellmarshall.com
Email: hrota@terrellmarshall.com

Seth Lesser, *Admitted Pro Hac Vice*
Fran L. Rudich, *Admitted Pro Hac Vice*
Attorneys for Plaintiff and the Class
KLAFTER OLSEN & LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10514
Telephone: (914) 934-9200
Email: seth@klafterolsen.com
Email: fran@klafterolsen.com
Email: nancy.velasquez@klafterolsen.com
Email: alexis.castillo@klafterolsen.com
Kurt B. Olsen
Attorneys for Plaintiff and the Class
KLAFTER OLSEN & LESSER LLP
1250 Connecticut Avenue, N.W., Suite 200
Washington, D.C. 20036
Telephone: (202) 261-3553
Email: ko@klafterolsen.com

REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION - 11
CASE NO. 2:18-CV-00012-SMJ

Robert S. Green, *Admitted Pro Hac Vice*
James Robert Noblin, *Admitted Pro Hac Vice*
Attorneys for Plaintiff and the Class
GREEN & NOBLIN, P.C.
2200 Larkspur Landing Circle, Suite 101
Larkspur, California 94939
Telephone: (415) 477-6700
Email: gnecf@classcounsel.com
Email: jrn@classcounsel.com

David Martin
Mark Ravis, *Admitted Pro Hac Vice*
Attorneys for Plaintiff and the Class
MARK RAVIS & ASSOCIATES
1875 Century Park East, Suite 700
Los Angeles, California 90067
Telephone: (310) 295-4145
Email: dhmartin99@gmail.com
Email: mravis99@gmail.com

Janet R. Varnell, *Admitted Pro Hac Vice*
Attorneys for Plaintiff and the Class
VARNELL & WARWICK
P.O. Box 1870
Lady Lake, Florida 32158
Telephone: (352) 753-8600
Facsimile: (352) 504-3301
Email: jvarnell@varnellandwarwick.com

CERTIFICATE OF SERVICE

I, Beth E. Terrell, certify that on March 13, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to:

>Maren Roxanne Norton, WSBA #35435
>J. Scott Pritchard, WSBA #50761
>Attorneys for Defendants
>STOEL RIVES LLP
>600 University Street, Suite 3600
>Seattle, Washington 98101
>Telephone: (206) 624-0900
>Facsimile: (206) 386-7500
>Email: mrnorton@stoel.com
>Email: scott.pritchard@stoel.com
>
>Steven M. Cady, *Admitted Pro Hac Vice*
>Brendan V. Sullivan, Jr., *Admitted Pro Hac Vice*
>Andrew McBride
>William Murray
>Attorneys for Defendants
>WILLIAMS & CONNOLLY, PLLC
>725 Twelfth Street, N.W.
>Washington, D.C. 20005
>Telephone: (202) 434-5321
>Facsimile: (202) 434-5029
>Email: scady@wc.com
>Email: bsullivan@wc.com
>Email: amcbride@wc.com
>Email: bmurray@wc.com

DATED this 13th day of March, 2020.

                    TERRELL MARSHALL LAW GROUP PLLC

                    By:   /s/ Beth E. Terrell, WSBA #26759
                          Beth E. Terrell, WSBA #26759
                          Attorneys for Plaintiff and the Class
                          936 North 34th Street, Suite 300
                          Seattle, Washington 98103
                          Telephone: (206) 816-6603
                          Facsimile: (206) 319-5450
                          Email: bterrell@terrellmarshall.com