FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 12, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CYNTHIA HARVEY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CENTENE MANAGEMENT COMPANY LLC and COORDINATED CARE CORPORATION,<br><br>Defendants. | No. 2:18-cv-00012-SMJ<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |

Plaintiff Cynthia Harvey alleges Defendants Centene Management Company, LLC and Coordinated Care Corporation administered a health insurance plan (the "Ambetter" product) with a legally inadequate network of medical providers and, when members were forced to seek care outside the Ambetter network, illegally allowed them to be billed more than they would have paid for in-network services. Because the Court finds there are superior alternatives to a class action to resolve Plaintiff's claims, and because necessary individualized determinations make a class action impractical, the Court denies Plaintiff's motion to certify a class of all Ambetter customers between 2012 and the present.

ORDER DENYING PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION – 1

# BACKGROUND

Centene[1] is a provider of health insurance coverage throughout the country, including in Washington State, where it sells the Ambetter insurance plan at issue in this case in nineteen different counties. ECF No. 106-1 at 23. Federal law requires health insurance plans like the Ambetter product offer coverage for ten categories of "essential health benefits" and provide "a network that is sufficient in number and types of providers" so that "all services will be accessible without unreasonable delay." 42 U.S.C. §§ 300g-13, 18022; 45 C.F.R. § 156.230(b)(2).

Washington law independently requires health insurance plans to provide certain benefits and an adequate network of providers, including in certain specialties. Wash. Admin. Code §§ 284-170-200(1)–(2), 284-170-270. Washington also obligates insurers to disclose limitations on their networks and maintain up-to-date provider directories. Wash. Admin. Code §§ 284-170-200(8), 284-170-260. Where an insurer's provider network is inadequate, Washington law requires it to ensure that an insured may "obtain[] the covered service from a provider or facility within reasonable proximity of the [insured] at no greater cost" than the insured

---

[1] Defendant Coordinated Care Corporation and Centene Management Company LLC are both subsidiaries of Centene Corporation, which is not a named Defendant in this action. Coordinated Care administers the Ambetter insurance program in Washington while Centene Management Company provides administrative support. ECF No. 92-1 at 185. For the sake of simplicity, unless otherwise noted, references to "Centene" should be understood as references to both Defendants.

ORDER DENYING PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION – 2

would pay in-network. Wash. Admin. Code § 284-170-200(5). The Ambetter "evidence of coverage"—Centene's contract with plan members—describes each of these rights. *See* ECF No. 94 at 10–13

The crux of Plaintiff's allegations is that Centene has for years failed to maintain an adequate network of providers, forcing members to receive care at out-of-network facilities and from out-of-network providers. *See* ECF No. 62. Plaintiff alleges Centene fails to prevent members forced to seek care outside the Ambetter network from being billed for the difference between what the provider or facility charges and what the member would pay had they received care in-network—so-called "balance billing."[2] ECF No. 91 at 18. Plaintiff asserts that between 2014 and 2018, Centene denied thousands of claims because the member received care from an out-of-network facility or provider. *Id.* at 16.

In 2017, Washington's Office of the Insurance Commissioner (OIC) notified Centene it had received hundreds of complaints from Washington consumers concerning inadequacies in the Ambetter network and balance billing. *See* ECF No. 91 at 16–17; ECF No. 94 at 93. The OIC brought enforcement action against Centene, and the two eventually entered into a Consent Order by which Centene agreed to pay $1.5 million, admitted its network was inadequate and failed to provide

---

[2] Plaintiff also alleges Centene failed to protect its members from "surprise billing," which occurs when a member receives care at an in-network facility from an out-of-network provider. *See* ECF No. 62; ECF No. 106-6 at 2.

ORDER DENYING PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION – 3

members sufficient access to care, and agreed to follow a "Compliance Plan" approved by the OIC. *See* ECF No. 94 at 92–101; ECF No. 106-2 at 2–5. The Compliance Plan required Centene to address network inadequacies in certain areas and provide reimbursement to members who paid out-of-network charges when no in-network option was available. ECF No. 106-2 at 2–5. Centene agreed to hire an independent auditor to oversee the Compliance Plan's implementation. *Id.* at 2.

Centene thereafter notified more than 70,000 members that reimbursement may be available for amounts paid to out-of-network providers or facilities where no in-network option was available; the auditor subsequently sent follow-up letters to more than 10,000 members identified based on their claims history. ECF No. 106 at 4–5; ECF Nos. 106-3, 106-4. Several hundred members submitted requests for reimbursement, of which Centene paid 113. ECF No. 94 at 810–14. In January 2019, the OIC determined Centene had satisfied the requirements of the Compliance Plan, though Centene remains subject to the federal and state statutory and regulatory requirements described above. *See* ECF No. 106-5.

On January 11, 2018, Plaintiff brought suit against Defendants on behalf of herself and others similarly situated. ECF No. 1. Plaintiff alleges Centene continues to maintain an inadequate network and continues to allow balance billing, in breach of its contract with members and in violation of Washington's Consumer Protection Act (CPA). *See* ECF No. 62; ECF No. 91 at 20–21. Before the Court is Plaintiff's

1   Motion for Class Certification, ECF No. 91.[3] Plaintiff seeks an order certifying a
2   class of all who purchased the Ambetter product between January 11, 2012 and the
3   present. Plaintiff also seeks an order appointing herself as class representative and
4   appointing her counsel as class counsel. *Id.* at 9, 40. Defendants oppose class
5   certification. ECF No. 105. Having reviewed the briefing and the file in this matter,
6   the Court is fully informed[4] and denies the motion because a class action is not a
7   superior vehicle to adjudicate the putative class's claims, and issues common to the
8   class do not predominate over individualized questions of law and fact.

## LEGAL STANDARD

Federal Rule of Civil Procedure 23 permits a representative plaintiff or group of plaintiffs to sue on behalf of others similarly situated to obtain redress for wrongs common to all class members. Under Rule 23(a), all putative classes must satisfy four requirements, known as "numerosity, commonality, typicality, and adequate representation," designed to "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Wal-Mart Stores, Inc. v. Dukes*, 564

---

[3] The Motion for Class Certification was filed under seal. ECF No. 91. An identical version of Plaintiff's motion with limited redactions appears at ECF No. 100.

[4] Though Defendants' motion was originally noted for hearing with oral argument, the Court finds oral argument unnecessary because, having reviewed the record, the parties' briefs, and the relevant legal authorities, the Court is fully informed. *See* LCivR 7(i)(3)(B)(iii).

ORDER DENYING PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION – 5

U.S. 338, 349 (2011) (internal quotations omitted) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)). Putative class actions like this one which seek compensatory damages must also satisfy the criteria of Rule 23(b)(3) by showing that "questions of law or fact common to class members predominate" over issues specific to individual members of the class, and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Green v. Occidental Petroleum Corp.*, 541 F.2d 1335, 1340 (9th Cir. 1976)

      In evaluating whether a putative class satisfies Rule 23(b)(3)'s criteria, a court considers the class members' interest in litigating separate actions, the "extent and nature" of litigation "concerning the controversy already begun," the desirability or lack thereof of concentrating litigation in a single forum, and the difficulties of managing a class action. Fed. R. Civ. P. 23(b)(3)(A)–(D). "[B]efore certifying a class, the trial court must conduct a rigorous analysis to determine whether the party seeking certification has met the prerequisites of Rule 23." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

## DISCUSSION

**A.  The putative class satisfies Rule 23(a)**

      Centene does not dispute that the putative class meets the requirements of Rule 23(a), and the Court's independent review of the record satisfies it that those

criteria are met. First, as to numerosity, Plaintiff represents the putative class would include more than 100,000 consumers who purchased Ambetter policies since January 11, 2012, *see* ECF No. 91 at 26, easily satisfying the numerosity requirement. *See Garrison v. Asotin County*, 251 F.R.D. 566, 569 (E.D. Wash. 2008) ("Generally, 40 or more members will satisfy the numerosity requirement.").

Concerning commonality, Plaintiff identifies numerous questions of law and fact applicable to all putative class members, including adequacy of the Ambetter network, Centene's disclosure of inadequacies, and whether Centene's alleged wrongdoing violated Washington's Consumer Protection Act or breached its contracts with members. ECF No. 91 at 26–27. These questions, susceptible to resolution on a class-wide basis, are significant enough to satisfy the requirement of commonality. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) ("[C]ommonality only requires a single significant question of law or fact." (citing *Dukes*, 564 U.S. at 359)).

Regarding typicality, Plaintiff contends she is representative of the average putative class member who suffered the injuries alleged because she received care outside the Ambetter network due to the network's inadequacy and received a balance bill. ECF No. 91 at 28. Though Plaintiff's injury likely differs in magnitude from other putative class members, the typicality requirement is satisfied. *See*

*Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 734 (9th Cir. 2007).

Lastly, concerning adequacy of representation, Centene does not contest that Plaintiff herself, and the several law firms which together represent her, would adequately represent the interests of the putative class. Having reviewed the record of Plaintiff's role in the litigation and the combined experience of Plaintiff's counsel in class litigation, the Court finds no basis to question that this requirement is met.

**B.    The putative class does not satisfy Rule 23(b)(3)**

The dispute over Plaintiff's motion to certify the putative class centers on the requirements of Rule 23(b)(3). Namely, Centene contends class certification is inappropriate because Plaintiff and others like her have superior, non-judicial alternatives to a class action, and because issues common to the class do not sufficiently predominate to warrant certification. *See* ECF No. 105.

**1.    A class action is not superior to alternative remedies**

Centene first contends a class action is not the appropriate mechanism to litigate Plaintiff's claims because Ambetter consumers who were allegedly balance-billed may pursue one or more of three alternative remedies. Thus, Centene argues the putative class fails Rule 23(b)(3)'s superiority requirement, which is satisfied only where "no realistic alternative" to a class action exists. *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234–35 (9th Cir. 1996). In evaluating whether a class action is superior to any alternatives, the court is not confined to considering judicial

methods of handling the dispute but may instead consider administrative and other non-judicial avenues by which class members may obtain redress. *See Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 210–11 (9th Cir. 1975).

### i. Ambetter members may seek relief from Centene directly and appeal to an independent entity

First, Centene argues that a member who allegedly paid more after receiving care from an out-of-network provider due to Centene's network inadequacy may simply request reimbursement from Centene itself. ECF No. 105 at 15–17. Further, it argues, a member dissatisfied with Centene's response may appeal to an Independent Review Organization (IRO), certified by the OIC, the decision of which is binding on Centene. ECF No. 106-1 at 79–80. As Centene notes, Plaintiff sought and received reimbursement through this process. *See* ECF No. 62 at 23.

Courts have concluded that a class action fails the superiority inquiry where a defendant itself offers a mechanism by which putative class members may obtain relief. *See, e.g.*, *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 214 F.R.D. 614, 622 (W.D. Wash. 2003) (holding class action not superior where "defendants maintain refund and product replacement programs" for defective products); *Webb v. Carter's Inc.*, 272 F.R.D. 489, 504 (C.D. Cal. 2011) (holding class action not superior where defendant garment manufacturer "allow[ed] consumers to obtain refunds for the garments, even without a receipt, and

ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION – 9

reimburse[d] consumers for out-of-pocket medical costs for treating skin irritation resulting from" allegedly defective product).

Plaintiff argues that to deny class certification based on the availability of relief from Centene would mean "any defendant with a customer service department could defeat superiority by arguing that it should be allowed to handle complaints in house." ECF No. 108. The Court disagrees. Unlike the average business that fields complaints from dissatisfied customers, Centene operates in a highly regulated industry, bound by a web of statutory and regulatory requirements over which an independent state agency, the OIC, has enforcement authority. Nor does the average business permit its customers to appeal adverse decisions to an outside agency, certified by state regulators, the decision of which it agrees to be bound by. In short, the Court finds the putative class members have an adequate alternative to class litigation by requesting reimbursement for balance billing from Centene itself and, if dissatisfied, appealing to the IRO. *See Valentino*, 97 F.3d at 1234–35.

### ii.    Ambetter members may seek assistance from the OIC

Second, Centene argues an Ambetter member disinclined to seek reimbursement from Centene, or dissatisfied with the results of doing so, may request assistance from the OIC. ECF No. 105 at 17–19. The OIC, an independent agency of the State of Washington, exists to regulate Washington insurers and enforce many of the statutory and regulatory provisions Plaintiff alleges Centene

violated. *See What we can (and can't) do*, Office of the Ins. Comm'r Wash. State, https://www.insurance.wa.gov/what-we-can-and-cant-do (last visited May 8, 2020).

Courts have found, where administrative avenues to relief like those offered by the OIC exist, that a putative class action is not a superior mechanism for adjudicating disputes. *See, e.g.*, *Rowden v. Pac. Parking Sys., Inc.*, 282 F.R.D. 581, 586 (C.D. Cal. 2012) (finding state administrative mechanism for settling citizens' claims superior to class litigation). As set out above, the Court's superiority analysis is not limited to evaluating whether the putative class members would be better off pursuing individual civil lawsuits against Centene. For example, in *Kamm v. California City Development Company*, the Ninth Circuit held a putative class action failed the superiority test where state regulators had already sued the defendant, resulting in a settlement agreement by which the defendant agreed to reimburse aggrieved parties. 509 F.2d at 207–13. The Ninth Circuit emphasized a class action was not a superior alternative to the existing procedures given (1) the necessary expenditure of judicial resources in a class action, (2) variations in the relief sought by class members, (3) the existence of significant relief available through the state settlement, (4) the existence of the consent decree over which the state court maintained jurisdiction, and (5) the continuing viability of individual suits for those inclined to pursue them. *Id.* In sum, given the availability of

ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION – 11

assistance from the OIC and the relief it is capable of providing, Plaintiff has failed to show no realistic alternatives to a class action exist, and Rule 23(b)(3)'s superiority requirement is not satisfied. *Valentino*, 97 F.3d at 1234–35.

    iii. **Ambetter members may participate in the Compliance Plan**

Finally, Centene argues Ambetter members may pursue reimbursement for costs incurred due to the Ambetter network's inadequacies by participating in the OIC-ordered Compliance Plan. ECF No. 105 at 19–23; *see also* ECF Nos. 106-2, 106-3. Pursuant to the requirements of that plan, Centene argues, more than 80,000 notices concerning members' right to seek reimbursement for out-of-network costs were sent, and in cases where Centene found the consumer was in fact charged more than was appropriate, the consumer was reimbursed with 8% annual interest. *See* ECF No. 105 at 19–20; ECF No. 106-2 at 5. As described above, courts have regularly found putative class actions fail the superiority requirement where an existing scheme offering reimbursement to putative class members exists, and the Court concludes the Compliance Plan affords aggrieved members just such an avenue to reimbursement. *See Kamm*, 509 F.2d at 213; *Rowden*, 282 F.R.D. at 586.

Plaintiff contends the efficacy of the Compliance Plan—like contacting Centene or the OIC—depends in large part on injured Ambetter members to "self-identify as having been improperly billed and document their claim." ECF No. 91 at 20; *see also* ECF No. 108 at 7. But as Centene points out, the OIC-approved

Compliance Plan alone resulted in more than 80,000 notices sent to members of their potential right to reimbursement, and each member's "evidence of coverage" notifies them of their right to request reimbursement for balance bills or contact the OIC. *See* ECF No. 106-1 at 80. Plaintiff fails to explain how a notice sent to class members would yield a greater response. As such, the Court finds the Compliance Plan as well as directly contacting Centene or the OIC, constitute adequate alternatives to a class action, and Rule 23(b)(3)'s superiority requirement is not satisfied.[5] *Valentino*, 97 F.3d at 1234–35; *see also Rutledge v. Elec. Hose & Rubber Co.*, 511 F.2d 668, 673 (9th Cir. 1975) (holding class action must be "superior to, and not just as good as, other available methods for handling the controversy").

### 2.   Common issues do not predominate

Second, Centene argues the putative class fails Rule 23(b)(3)'s requirement that common questions of law or fact "predominate" over individualized inquiries. ECF NO. 105 at 23–39. In evaluating predominance, the court is primarily

---

[5] As for Plaintiff's claims not redressable through these alternatives—namely, her claims for breach of contract and Washington's CPA, the Court notes the typical economic disincentive attendant individual lawsuits that are addressed by class action litigation—namely, the high cost of litigation and minimal possible recovery—are alleviated as to Plaintiff's claims under the Washington CPA, which permits recovery of treble damages and attorney fees to the successful plaintiff. *See* Wash. Rev. Code § 19.86.090. Though Plaintiff is correct that this goes a long way toward eliminating the concern that her attorneys would profit from success more than the putative class would, *see* ECF No. 108 at 5 n.1, it cuts equally against the superiority of a class action to vindicate Plaintiff's and others' CPA claims.

ORDER DENYING PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION – 13

concerned with "the balance between individual and common issues." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009). The predominance inquiry is "far more demanding" than Rule 23(a)'s threshold commonality requirement, *see Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 624 (1997), and the court has a "duty to take a 'close look' at whether common questions predominate over individual ones." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) (internal quotations omitted) (quoting *Amchem Prod., Inc.*, 521 U.S. at 615). The court must assure itself that the "common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016).

The gravamen of Plaintiff's claims is that she and others similarly situated paid more than they should have because they were forced, by Centene's inadequate provider network, to seek medical care at an out-of-network facility or from an out-of-network provider. *See* ECF No. 62. Though adjudicating her claims would no doubt entail resolving common questions of fact (were an adequate number of anesthesiologists available in Benton County in 2015?) and law (did Centene's conduct breach its contract with members or the Washington CPA?), inquiries of class-wide applicability would not predominate.

Were the putative class certified, providing complete relief would first necessitate resolving the threshold issue of injury-in-fact, determining (1) which

among the more than 100,000 class members received out-of-network care, and (2) among those, which were forced to do so by the inadequate network and obtained care otherwise covered by the Ambetter policy. The necessity of these fact-specific determinations is applicable to Plaintiff's CPA and breach of contract claims, both of which require a showing of damages. *Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 719 P.2d 531, 539–40 (Wash. 1986) (en banc); *DC Farms, LLC v. Conagra Foods Lamb Weston, Inc.*, 317 P.3d 543, 553 (Wash. Ct. App. 2014).

Plaintiff herself recognizes that many of those swept up in the broad definition of the proposed class—all those who purchased Ambetter policies since 2012, *see* ECF No. 91 at 9—received no out-of-network care, or did so under circumstances not entitling them to reimbursement. *See* ECF No. 91 at 28; ECF No. 95 at 8 (identifying claims for 99,439 members within class definition), *id.* at 20 (noting only 14,117 class members "may have" received a balance bill). Nor does Plaintiff suggest that identifying those to whom reimbursement is owed would be anything other than a laborious, record-intensive task. Tellingly, though she suggests around 14,000 members may have received balance bills, she admits this number is only an estimate—no doubt because whether those excess charges were improper necessitates analysis of each case's specific facts.[6] ECF No. 108 at 10. ("[A]t least

---

[6] To reach this estimate, it appears Plaintiff identified claims submitted by out-of-network providers for which Centene or the member—by virtue of coinsurance or any applicable deductible—paid less than the full amount billed by the provider.

ORDER DENYING PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION – 15

14,037[7] class members *likely* were balance billed." (emphasis added)).

That the proposed class would inevitably contain many members who never suffered the alleged primary injury is itself fatal to Plaintiff's motion. *See Mazza*, 666 F.3d at 595 (finding no predominance where "it is likely that many class members were never exposed to the allegedly misleading advertisements"); *Andrews v. Plains All Am. Pipeline, L.P.*, 777 Fed. App'x 889, 892 (9th Cir. 2019) ("Because individual class members will need to present varying evidence to demonstrate causation and injury . . . common issues of fact do not predominate."). Nor would the individualized issues end at injury-in-fact. For those members to whom *some* reimbursement is due, the question of *how much* would entail yet further analysis of the specifics of each case, requiring the Court to determine the difference between the out-of-network charges and what the member would have paid to an in-network

---

*See* ECF No. 95 at 14–20. But this method does not appear capable of identifying whether the member subsequently received a bill for the cost differential nor, more importantly, whether any such balance billing was improper due to Centene's network inadequacy. Nor does it purport to. *See id.* (noting result of analysis included claims that "*may have* resulted in Balance Bills" (emphasis added)).

[7] Plaintiff's estimate of the number of members who may have received balance bills is inconsistent throughout the record. *See* ECF No. 91 at 25 ("Centene's data also shows that 14,117 members may have been improperly balance billed."); ECF No. 95 at 20 (same); ECF No. 108 at 14 ("[A]t least 14,037 class members likely were balance billed."); ECF No. 110 at 24 (supplemental declaration estimating 14,089 potentially balance-billed members). Though certainly not dispositive, the Court believes these shifting estimates illustrate the difficulty inherent in identifying members improperly balance billed.

ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION – 16

provider or facility, what portion of that amount the member in fact paid, the extent to which any deductible or co-payment might offset the member's right to reimbursement, and the extent to which Centene already reimbursed the member through any of the mechanisms described above.

In short, though a class action would no doubt resolve some class-wide issues in a single proceeding, it would then entail thousands of individualized determinations of whether, and if so to what extent, a member was injured by Centene's alleged network inadequacy. The proposed class fails Rule 23(b)(3)'s predominance requirement. *See Comcast Corp.*, 569 U.S. at 34.

## CONCLUSION

Plaintiff credibly contends she and others like her were deprived of an adequate network of in-network medical providers and facilities—benefits for which she and other Ambetter members paid, and to which the law entitled her. But Centene has established that those aggrieved by this alleged inadequacy may avail themselves of at least three adequate—and, presumably, cheaper and quicker— mechanisms by which to seek reimbursement. Even if adjudicating those claims in a federal court were the most efficient approach, the scores of individualized determinations required for the Court to award relief render a class action inappropriate. The motion is denied.

//

Accordingly, **IT IS HEREBY ORDERED**:

Plaintiffs' Motion for Class Certification, **ECF Nos. 91, 100**, is **DENIED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 12th day of May 2020.

_____
SALVADOR MENDOZA, JR.
United States District Judge